Nos. 67,354
67,355

STATE OF KANSAS, *Appellee*, v. CHARLES J. SCHLEIN and ROBERT
W. BURGOON, *Appellants*.

(854 P.2d 296)

Opinion filed June 16,
1993.

*David R. Gilman*, of Overland Park, argued the cause and was on the brief for appellants.

*Michael Warner*, assistant district attorney, argued the cause, and *Paul J. Morrison*, district attorney, and *Robert T. Stephan*, attorney general, were on the brief for appellee.

The opinion of the court was delivered by

LOCKETT, J.: Defendants Charles J. Schlein and Robert W. Burgoon were each convicted of one count of gambling in violation of K.S.A. 21-4303(b) (entering or remaining in a "gambling place" with intent to make a bet). Schlein and Burgoon each were separately sentenced to serve 30 days in the Johnson County Adult Detention Center and fined $150.

Both appealed, claiming the State failed to prove the place they had entered or remained in was a "gambling place." Schlein also claims that the trial court's instructions failed to define a gambling place. The Court of Appeals reversed their convictions. 17 Kan. App. 2d 434, 839 P.2d 58 (1992). The State's petition for review was granted.

James Carmack, special agent with the Kansas Bureau of Investigation (KBI), discovered a flier at the Woodlands racetrack advertising an annual marathon poker tournament. The flier included a map showing the location, date, and time the tournament would be played. On the date advertised in the flier, KBI agents and Overland Park police officers investigated the poker tournament being held at the location stated in the flier, a residential address in Johnson County, Kansas.

Police detective John Jackson, wired with a transmitter and working undercover, went to the residence and asked the suspected tournament organizer if he might participate in the tournament. After Jackson paid the organizer an entry fee of $150, he was escorted next door to the adjoining half of the two-story duplex. The suspected tournament organizer was the lessee of both premises. Half of the duplex was occupied as his family residence. Jackson walked through the lower level of the tournament half of the duplex, going from room to room. He observed only a table and chairs in the dining room and a sofa and television in the living room.

Approximately eight men were present when Jackson arrived. Jackson watched other individuals arrive. Each paid the $150 entry fee. While waiting for the tournament to commence, Jackson read information supplied by the tournament organizer. It explained the entry fees, a breakdown of how the money would be paid to the winners, what poker games would be played, how much betting would be allowed in each round, the times the players would be playing, break times, and the rules of the tournament.

Eventually, 22 people, including Jackson, assembled to play poker. The tournament organizer gathered the players together, explained the rules, and assigned each player a number that corresponded to a chair on the second floor in which the player would be seated.

The players then went upstairs. Green-topped card tables had been placed in each of the three upstairs rooms. At each card table were chairs with numbers on them. Poker chips and playing cards were on each table. No other furnishings were in the rooms. Jackson located his assigned chair in one of the rooms. He began playing various poker games with other players, using the poker chips to bet. Jackson left his chair twice, looked into the other two rooms, and observed other individuals playing poker.

At approximately midnight, after Jackson signaled, the other police officers and the KBI agents entered the home and arrested the tournament players. The KBI agents seized several gambling related items, including four card tables, a number of stacking chairs, numerous boxes of poker chips, playing cards, $1,777 in cash, a tournament survey sheet, tournament rules and information sheets, and a trophy etched with "St. Patrick's Day Marathon Poker Championship" and the prior winners' names dating back to 1987.

Complaints were filed against Schlein and Burgoon alleging each had engaged in gambling in violation of K.S.A. 21-4303(b). During Schlein's trial, Detective Jackson testified that at one time he patrolled the area of Overland Park in which the residence is located. Jackson admitted that he had never heard of gambling taking place on the premises before the night of the tournament. Jackson stated that to his knowledge the property had never been used previously for gambling purposes. Special agent Carmack testified he did not know whether the residence had ever been used for gambling prior to the poker tournament and, to his knowledge, the premises were used for gambling only on this one occasion.

At the close of the State's evidence, Schlein moved the trial court for judgment of acquittal, asserting the State had failed to prove he had entered and remained in a gambling place for the purpose of making a bet. Schlein argued the State had failed to prove that the premises had been used previously as a gambling place.

In ruling on a motion for judgment of acquittal, if a trial judge concludes from the evidence that a reasonable mind might fairly decide a defendant is guilty beyond a reasonable doubt, the motion must be denied and the case must go to the jury. The trial

court denied Schlein's motion. On appeal, the reviewing court must decide whether a rational factfinder could have found the accused guilty beyond a reasonable doubt. *State v. Crichton,* 13 Kan. App. 2d 213, 218-19, 766 P.2d 832 (1988), *rev. denied* 244 Kan. 739 (1989).

During the jury instruction conference, Schlein objected to the trial court's instruction on the elements of the crime of gambling and requested his proposed instruction be given. The trial court overruled Schlein's objection. After deliberations, the jury found Schlein guilty.

Burgoon did not request a jury trial. In a trial to the court, Burgoon and the State stipulated that (1) there was a poker tournament, which involved the playing of cards, betting, and the exchange of money which took place at a house address in Overland Park, Johnson County, Kansas; (2) this place was an unoccupied one-half of a duplex which contained poker tables, poker chips, playing cards, and poker rules and game schedules; (3) the defendant took part in the tournament and he willfully entered and remained in the house with the intent to make a bet; (4) the winners of the tournament were to receive cash prizes; and (5) this tournament had been held in prior years at various locations. The stipulation also indicated the State had and would offer as evidence poker rules, a trophy, poker player names including the name of Robert W. Burgoon, and other written paraphernalia. Based upon the stipulation, the trial court found Burgoon guilty.

On appeal, Schlein contends the trial court erred in denying his motion for judgment of acquittal, while Burgoon contends the trial court erred in finding him guilty, because the State did not prove they had entered a "gambling place." The defendants argued to the trial court there was no evidence that the residence had a reputation as a gambling place or that the residence was frequently visited by persons known to be commercial gamblers. The defendants asserted K.S.A. 21-4303(b) contemplates something more than one evening of gambling at a location before the statute is violated.

Gambling is entering or remaining in a gambling place with intent to make a bet, to participate in a lottery, or to play a gambling device. K.S.A. 21-4303(b). A "gambling place" is any

place, room, building, vehicle, tent, or location which is used for any of the following: making and settling bets; receiving, holding, recording, or forwarding bets or offers to bet; conducting lotteries; or playing gambling devices. Evidence that the place has a general reputation as a gambling place or that, at or about the time in question, it was frequently visited by persons known to be commercial gamblers or known as frequenters of gambling places is admissible on the issue of whether it is a gambling place. K.S.A. 21-4302(5).

The question presented to the Court of Appeals by Schlein and Burgoon in their consolidated appeals was whether evidence that the premises had previously been used as a gambling place is required to prove they entered a gambling place with the intent to make a bet. Interpretation of a statute is a question of law, and it is the function of the court to interpret a statute to give it the effect intended by the legislature. *Martindale v. Tenny*, 250 Kan. 621, Syl. ¶ 1, 829 P.2d 561 (1992). Penal statutes must be strictly construed in favor of the persons sought to be subject to them. *State v. Thompson*, 237 Kan. 562, 566, 701 P.2d 694 (1985).

The State contended K.S.A. 21-4302(5), which defines "gambling place," is quite broad in scope and is not limited to places that have a reputation as a gambling place. The State asserts any place where gambling occurs may qualify as a gambling place if it is being used for the purposes described in K.S.A. 21-4302(5). The State argues that half of the duplex where the gambling occurred was not being used as a residence but was being used solely for the purpose of housing an elaborately organized marathon poker tournament. The State contends this is sufficient evidence to show the defendants entered into a "gambling place" with the intent to place a bet.

The Court of Appeals observed that the definition of gambling place found in K.S.A. 21-4302(5) is similar to the definition of gambling place set forth in Wis. Stat. § 945.01(4)(a) and (b) (1991), which states:

"(a) A gambling place is any building or tent, any vehicle (whether self-propelled or not) or any room within any of them, one of whose principal uses is any of the following: making and settling bets; receiving, holding,

recording or forwarding bets or offers to bet; conducting lotteries; or playing gambling machines.

. . . .

"(b) Evidence that the place has a general reputation as a gambling place or that, at or about the time in question, it was frequently visited by persons known to be professional gamblers or known as frequenters of gambling places is admissible on the issue of whether it is a gambling place."

(We note the New Mexico statute prohibiting gambling, N.M. Stat. Ann. § 30-19-1.E (Michie 1992 Supp.), when defining a gambling place, also expressly requires proof that one of the principal uses of the premises is gambling.)

In *State v. Nixa,* 121 Wis. 2d 160, 360 N.W.2d 52 (1984), the Wisconsin Court of Appeals was required to interpret the definition of "gambling place" in Wis. Stat. § 945.01(4) and determine whether the evidence sustained the defendant's conviction on a charge of illegally remaining in a gambling place. Nixa had been arrested after allegedly participating in a gambling party in the recreational building of an apartment complex. The arrest followed an investigation by the sheriff's department and city police conducted after the sheriff's department received an anonymous telephone call about the gambling party. Upon arriving at the apartment complex, the police discovered a room fully equipped with gambling tables and related paraphernalia and crowded with people eating, drinking, and gambling. Nixa was charged with one count of making a bet and one count of entering and remaining in a gambling place. Nixa unsuccessfully moved to dismiss the charge of remaining in a gambling place, contending the one-time use of the apartment recreational building for gambling did not constitute a gambling place under Wis. Stat. § 945.01(4). 121 Wis. 2d at 162.

The Wisconsin Court of Appeals observed that various terms in the statute suggest that prior gambling activity is essential for a location to be considered a gambling place. The definition in subsection (a) of Wis. Stat. § 945.01(4) provides that a location may be considered a gambling place if one of its principal uses is gambling. The court noted subsection (b) provides that evidence showing a place has a reputation for gambling or is frequently visited by gamblers or people known as frequenters of gambling places is admissible on this question and concluded the term "one

of whose principal uses" implies a pattern of similar use on a prior occasion or occasions. 121 Wis. 2d at 164.

The *Nixa* court, quoting *State v. Morrissy*, 25 Wis. 2d 638, 642-43, 131 N.W.2d 366 (1964), reasoned that the use of a place or room at any given time may determine its principal use at that time but for the purpose of Wis. Stat. § 945.01(4), such use must be considered in light of the overall or other uses of the place or room. 121 Wis. 2d at 165. The *Nixa* court concluded under the circumstances evidence of prior gambling activity was necessary to prove the existence of a gambling place, held the evidence was insufficient, as a matter of law, to satisfy the element of the offense requiring proof of a gambling place, and reversed Nixa's conviction. 121 Wis. 2d at 164.

Our Court of Appeals observed that several of our sister states have held that more than one occasion of gambling must be shown to prove the premises is a gambling place. For authority it cited *State v. Cieri*, 128 Conn. 149, 151-52, 20 A.2d 733 (1941) ("[T]he use of a place to render it a gambling house must be frequent, customary, common or habitual . . . and a single act of gaming is insufficient to constitute it a gaming house."); *Glisson v. State*, 208 So. 2d 274 (Fla. Dist. App. 1968) (evidence must show gambling had been habitually carried on in house in question); *Whatley v. State*, 189 Ga. App. 173, 174, 375 S.E.2d 245 (1988), *cert. denied* 189 Ga. App. 913 (1989) (evidence is required that gambling activity had been occurring on premises on an ongoing basis); *People ex rel. Guido v. Calkins*, 13 Misc. 2d 791, 793, 178 N.Y.S.2d 385 (1958) (a gambling establishment is not one set up to exist for a moment, but is a regular place for the transaction of gambling as a business); and *Schepps v. City of El Paso*, 338 S.W.2d 955, 959 (Tex. Civ. App. 1960) (one occasion of gambling in a house will not be sufficient evidence to find the premises is a gambling house). It noted that the court in *Calkins* stated: " '[A]ssisting in the operation of a gambling establishment . . . is to be distinguished from the occasional placing of a bet or the wagering which occurs between friends, as an incident or form of recreation.' 13 Misc. 2d at 793." 17 Kan. App. 2d at 441. For a minority view that one instance of gambling is sufficient to render a premises a gambling place, it noted *People v. Smith*, 50 Ill. App. 2d 361, 365, 200 N.E.2d 748 (1964).

After reviewing relevant gambling statutes from other states, cases interpreting such statutes, and K.S.A. 21-4302 and 21-4303, the Court of Appeals pointed out that the Kansas Judicial Council notes following K.S.A. 21-4303 provide:

" 'Under subsection (b) it must be proved that (1) the offender entered or remained in a gambling place, *i.e.*, a structure, *one of whose principal uses* is for making and settling bets, receiving, holding, recording or forwarding bets or offers to bet, conduct lotteries, or playing gambling devices [21-4302(5)] and (2) that the offender had an intent to make a bargain which is a bet under 21-4302(1) or to participate in an enterprise which is a lottery under 21-4302(2) or to play a contrivance which is a gambling device under 21-4302(4).' (Emphasis supplied.)" 17 Kan. App. 2d at 438.

It observed that although the notes and comments of the Judicial Council do not have the force and effect of law and are advisory only, they may be one indication of legislative intent, citing *State v. Noah,* 246 Kan. 291, Syl. ¶ 3, 788 P.2d 257 (1990). It pointed out that the Judicial Council notes following K.S.A. 21-4305 and K.S.A. 21-4308 also refer to a gambling place as a place or structure, one of whose principal uses is for making and settling bets. In addition, it observed that the Judicial Council notes following K.S.A. 21-4302 state the statutes of Wisconsin, New Mexico, and Colorado were consulted in preparing that section, K.S.A. 21-4303, and certain other Kansas criminal statutes relevant to gambling. 17 Kan. App. 2d at 438. The Court of Appeals concluded that although

"the language of K.S.A. 21-4302(5) defining a gambling place does not include the phrase 'one of whose principal uses,' the Judicial Council notes following K.S.A. 21-4303 clearly show the legislature intended that under K.S.A. 21-4303(b) the State must prove the defendant entered or remained in a gambling place, *i.e.*, a structure, 'one of whose principal uses is for making and settling bets.' (Emphasis supplied.)" 17 Kan. App. 2d at 440.

The Court of Appeals found that the evidence was clear that the premises, at no previous time, had the reputation of a gambling place or had been used as such. It found that because the State failed to establish that the residence was a gambling place within the meaning of K.S.A. 21-4302(5), Schlein's and Burgoon's convictions for a violation of K.S.A. 21-4303(b) must be reversed.

Judge Rulon dissented, finding the statutory language in K.S.A. 21-4303(b) and K.S.A. 21-4302(5) clear and unambiguous. Judge Rulon concluded, "There is no statutory requirement that more

than one instance of gambling occur before a premises is rendered a gambling place. Judicial Council notes are *not* the equivalent of statutory law" (17 Kan. App. 2d at 443), and he also disagreed with the majority's decision that the district court erred when instructing the jury. Judge Rulon's use of the phrase "more than one instance of gambling" refers to use of a premises for gambling on different occasions.

We disagree with the analysis of the cases the majority of the Court of Appeals cites for the proposition that evidence that the premises had previously been used for gambling is required to prove the accused entered the premises in order to gamble. We find these cases distinguishable based on their facts.

In *State v. Cieri*, 128 Conn. 149, two partners owned and operated a restaurant. On a day when the defendant was absent and the partner was in charge of the premises, two police officers in civilian clothes entered the restaurant and each ordered a glass of beer. One officer played a pinball machine. When the indicator showed the officer was entitled to a free game, the officer inquired of the partner in charge if he could have a cigar rather than the free game. The partner in charge of the premises handed a cigar to the officer as an award for a free game. The officers then played the machine for 35 or 40 minutes without winning, expending $2.15 in the process. The defendant, although he was not present, was convicted of keeping a place for the purpose of gaming.

The appellate court in *Cieri* noted that to "keep a place," as used in the relevant statute, means an appropriation of the place by the person in control for the conduct of his business therein. The court observed although the pinball machine had been located in the restaurant for three months, it was not a gambling machine per se. The court found that the only evidence that the pinball machine was used for gambling was the time it was used by the officers. The court concluded that the single incident of gaming was insufficient to establish that the defendant, who was not present at the time the offense occurred, was guilty of keeping a place for the purpose of gaming. 128 Conn. at 151-52.

In *Whatley v. State*, 189 Ga. App. 173, the defendant was charged with intentionally operating and participating in the earnings of a gambling place. A gambling place was defined by statute

as any real estate or other property whatsoever, one of the principal uses of which is the making or settling of bets or the playing of gambling devices. All the evidence obtained against the defendant was seized from his home during the execution of a search warrant for marijuana. The evidence offered in support of a commercial gambling charge consisted of several hundred parlay stubs and a notebook containing notations on football games and betting amounts. At trial, there was no evidence that these items had been on the premises except on the day seized, nor was there any evidence that gambling activity had occurred on the premises. The court determined there was no inference that the conduct of gambling operations was "one of the principal uses" of the residence and therefore it could not conclude the house was being used as a "gambling place" within the meaning of the statute. The defendant's conviction was reversed. 189 Ga. App. at 174.

In *Schepps v. City of El Paso*, 338 S.W. 2d 955, several persons, including the defendant, agreed to shoot dice. They assembled in a house owned by the mother of one of the players. The house was vacant at the time. Officers of the vice squad, peeking through the window of the house, observed a dice game, obtained a search warrant, and with the help of other officers raided the house. The officers seized two pair of dice, one blanket, and $3,675 in cash. The defendant was arrested and charged with gambling. The question before the appellate court was whether the officers had the right to seize the money used in a gambling game open to the public. The court noted Texas law contemplated and only authorized confiscation of money found in gambling devices such as slot machines, pinball machines, etc., and not money whose title and possession are undisputed, as in this case. The monies were not in fact used in the gambling device but were the fruits of gambling. The court noted that the statute that allowed officers to seize money required that the seizure be made in a gambling house. The court concluded there was no evidence that the house was open to the public for gambling. 338 S.W. 2d at 958-59.

In *People ex rel. Guido v. Calkins*, 13 Misc. 2d 791, the defendant was arrested and charged in the information with wrongly, unjustly, unlawfully, and knowingly committing the crime of common gambling. The information alleged that on April 22, 1958,

in the city and county of Schenectady at about 3:45 p.m., the defendant aided and abetted in the operation of the gambling establishment known as the Albany Street Card Shop. The issue was whether the information failed to particularize the defendant's wrong. The county court found that the common, normal, ordinary meaning of the words used in the information stated with clarity that the defendant, at the time and place specified, was a common gambler and engaged in the operation of a gambling establishment. It noted that assisting in the operation of a gambling establishment, as the defendant therein was charged, is to be distinguished from the occasional placing of a bet or the wagering which occurs between friends as an incident or form of recreation. The court found that the information was sufficient. 13 Misc. 2d at 793.

The question of the application of a statute to a given set of facts is a question of law. *Brookover Feed Yards, Inc. v. Carlton, Commissioner,* 213 Kan. 684, 687, 518 P.2d 470 (1974). The rule of strict construction concerning penal statutes is subordinate to the rule that judicial interpretation must be reasonable and sensible to effectuate legislative design and the true intent of the legislature. *State v. Gonzales,* 245 Kan. 691, 705, 783 P.2d 1239 (1989) (quoting *State v. Carmichael,* 240 Kan. 149, 159, 727 P.2d 918 [1986]).

K.S.A. 21-4303(b) prohibits entering or remaining in a gambling place with intent to make a bet. A "gambling place" is any place used for making and settling bets; receiving, holding, recording or forwarding bets or offers to bet; conducting lotteries; or playing gambling devices. K.S.A. 21-4302(5) permits evidence that the place has a general reputation as a gambling place or that, at or about the time in question, it was frequently visited by persons known to be commercial gamblers or known as frequenters of gambling places to be admitted to prove whether the premises is a gambling place.

Judge Bullock in his dissent discusses the role of the Kansas Judicial Council in drafting proposed legislation and accompanying the proposed draft with explanatory notes intended to assist the legislature in understanding and interpreting the proposed legislation. Judge Bullock then states, "Upon those occasions when the legislature elects to adopt the proposed statutes drafted by

the Council, it frequently publishes the Council's explanatory notes as footnotes (or headnotes) to the statutory enactment."

Bills enacted by the legislature and signed by the governor do not contain the Judicial Council notes. The 1969 revision of the Kansas Criminal Code, which included the statutes under consideration here, did not contain the Judicial Council notes as part of the legislative enactment. See L. 1969, ch. 180.

After a bill has been enacted into law, K.S.A. 77-133 requires the Revisor of Statutes to prepare and include in the Kansas Statutes Annotated:

"(a) Prefatory material, including statement of copyright authority, authentication statements and table of contents;

(b) captions prefacing the text of the statutes and constitutions, showing their scope, in boldface type;

(c) the history of each statutory section;

(d) source notes [e.g., Judicial Council notes] and revisor's notes;

(e) cross references to related or qualifying provisions of other sections of the statutes;

(f) appropriate research and practice aids citing pertinent parts of other publications relating to Kansas laws if made available by the publisher thereof;

(g) notes, where possible and appropriate, citing identical statutes of other states;

(h) case annotations covering the reported decisions of the state and federal courts construing and interpreting Kansas laws; and

(i) table of sections showing location of present and former legislative enactments in compilation."

In arranging the material in the Kansas Statutes Annotated and latest supplements thereto, the Revisor of Statutes is not allowed to alter the sense, meaning, or effect of any legislative act. Any correction made by the Revisor of Statutes in editing which affects the substantive meaning of the law is construed as a clerical error only. K.S.A. 77-136.

In *Arredondo v. Duckwall Stores, Inc.,* 227 Kan. 842, 846, 610 P.2d 1107 (1980), we pointed out that the 1969 Kansas Criminal Code, K.S.A. 21-3101 *et seq.,* was a thorough revision of the Kansas criminal statutes, the result of five years of study by the Kansas Judicial Council. We noted that the Council's com-

ments on the various sections, originally published in the Judicial Council Bulletin in April 1968, had been edited by the Revisor of Statutes and printed in the Kansas Statutes Annotated. We further stated that these comments, published before the code was enacted by the legislature, are helpful in determining legislative intent.

The *Arredondo* court failed to note that the Revisor's Note to the Kansas Criminal Code indicates that the April 1968 Judicial Council comments were edited by the Office of the Revisor of Statutes to reflect changes later made by the Judicial Council and the legislature. Changes in the comments were then approved by Professor Paul E. Wilson, who served the Judicial Council in the preparation of the Kansas Criminal Code, rather than by the legislature. See Kansas Statutes Annotated, Vol. 2A, p. 145.

Judge Bullock's extensive research of cases where Kansas appellate courts have consulted the explanatory notes of the Kansas Judicial Council in construing a statute indicates that 2 out of a total of 101 cases support the majority. It is important to note that out of the remaining 99 cases, Judge Bullock is unable to cite a single case where the notes of the Judicial Council have been used to insert an additional element of proof in a criminal statute, as his dissenting opinion would have this court do.

As support for use of historical notes and commentaries to determine the legislative intent when enacting K.S.A. 21-4303, Judge Bullock also cites this court's practice of publishing the drafters' commentaries to the Model Rules of Professional Conduct, Kansas Supreme Court Rule 226 (1992 Kan. Ct. R. Annot. 238). We note that our prefatory rule to the Model Rules does not support Judge Bullock's reasoning but limits the use of the preamble and commentaries by the following language:

"*To the extent that they are not inconsistent with the rules herein adopted or the statutory or case law of Kansas,* the court also adopts in principle the preamble and comments accompanying the Model Rules, except as hereinafter modified." (Emphasis added.)

In his dissent, Justice Allegrucci disagrees with our holding that K.S.A. 21-4303(b) does not require proof the residence had previously been used for gambling or that gambling is "one of its principal uses." First, we note K.S.A. 21-4302(5) defines "gambling place" with reference to *bets, offers* to bet, *lotteries,* or

gambling *devices*. These terms are all plurals, indicating, at least facially, that more than one bet is required to convert a place into a "gambling place." The question whether a single bet converts a premises into a gambling place is not the question raised on appeal. Second, we note that there is no stated or implied right to gamble in the Constitutions of the United States or the State of Kansas. To allow bona fide nonprofit, religious, charitable, fraternal, educational, and veterans organizations to play bingo; nonprofit organizations to operate horse and dog racing and parimutuel wagering; and the State to operate a lottery required three amendments to the Kansas Constitution. See Kan. Const. Art. 15 §§ 3a, 3b, and 3c. Third, rather than addressing the facts of this case, Justice Allegrucci's dissent constructs a scenario in which, on one occasion, bets or offers to bet are made in a home, school, church, monastery, or nursing home in order to argue the legislature intended a place could be a gambling place only when gambling occurs at the place on a second or subsequent occasion.

Using the facts of this case, however, if one advertises and invites the public to participate in a poker tournament in his or her home, in a school, in a church, in a monastery, or in a nursing home; charges each contestant an entry fee; provides the contestants with the rules of the tournament; and provides prizes—each of those places would be converted into a gambling place and an individual who enters the premises where gambling is occurring, with the intent to participate in the poker tournament, has entered into a gambling place.

Nowhere in K.S.A. 21-4303(b) is there any reference to the phrase "one of whose principal uses" or to a requirement that the premises have been used previously for gambling. The statute is clear and unambiguous in this regard and is not open to construction or speculation as to the legislative intent behind it. In addition, nowhere in K.S.A. 21-4302(5) is there a reference to that phase or requirement.

"It has long been the rule in Kansas that in determining whether a statute is open to construction, or in construing a statute, ordinary words are to be given their ordinary meaning and courts are not justified in disregarding the unambiguous language. *State v. Gibson,* 8 Kan. App. 2d 135, 137, 651 P.2d 949 (1982); *State v. Howard,* 221 Kan. 51, 54, 557 P.2d 1280 (1976).

Even a penal statute subject to strict construction should not be read so as to add that which is not readily found therein, or to read out what, as a matter of ordinary language, is in it. *State v. Logan,* 198 Kan. 211, 213, 424 P.2d 565 (1967)." *State v. Haug,* 237 Kan. 390, 391-92, 699 P.2d 535 (1985).

See *Boatright v. Kansas Racing Comm'n,* 251 Kan. 240, Syl. ¶ 7, 834 P.2d 368 (1992).

The notes and comments of the Kansas Judicial Council appearing in Article 43 of Chapter 21 of the Kansas Statutes Annotated were not enacted by the Kansas Legislature, do not have the force and effect of law, are advisory only, and were edited and published by the Revisor of Statutes. They should not be construed as expressing legislative intent but they may be one indication of legislative intent. Where a statute is of doubtful meaning and susceptible upon reading of two constructions, the court may look to other sources, such as the Judicial Council notes, to determine the reason for the Act, and the purpose intended to be accomplished. But when a statute is clear and unambiguous, the court must give effect to the legislative intent therein expressed rather than make a determination of what the law should or should not be. Thus, no room is left for statutory construction. *In re Mary P.,* 237 Kan. 456, 459, 701 P.2d 681 (1985).

Here, the statutory definition of a "gambling place" is clear and unambiguous. The statute contains no requirement that the premises must have been used previously as a gambling place before it is rendered a gambling place. The statute does not expressly require that the place have as "one of its principal uses" the making and settling of bets. The legislature was aware that the Wisconsin and New Mexico statutes defining a gambling place included the phrase "one of whose principal uses is for making and settling bets" but chose not to incorporate that phrase in the Kansas statute.

Judicial Council notes are not the equivalent of statutory law. Use of the notes by the Court of Appeals to define the statute by requiring proof that the premises previously had been used as a gambling place added an element to the offense not present in the statute. The district court correctly determined that K.S.A.

21-4303(b) does not require the State to prove that the residence had previously been used for gambling.

The second issue raised is whether the trial court erred in refusing to instruct the jury pursuant to Schlein's proposed instruction defining a gambling place.

Over Schlein's objection, the trial judge instructed the jury pursuant to PIK Crim. 2d 65.06:

"The defendant is charged with the crime of gambling. The defendant pleads not guilty.

"To establish this charge each of the following claims must be proved:

1. That the defendant entered or remained in a gambling place with intent to make a bet; and

2. That this act occurred on or about the 8th day of March, 1991, in Johnson County, Kansas."

Schlein's proposed instruction defined a gambling place as "one of whose principal uses is for making and settling bets." Based on its decision of the first issue, the majority of the Court of Appeals panel concluded the trial court erred in refusing to instruct the jury pursuant to Schlein's proposed instruction defining a gambling place.

If the instructions properly and fairly state the law as applied to the facts in the case, and if the jury could not reasonably have been misled by them, then the instructions do not constitute reversible error. *State v. Morris,* 244 Kan. 22, 23, 765 P.2d 1120 (1988). Here, the trial court's instruction defining a gambling place was properly based upon the statute. The trial court correctly instructed the jury.

The judgment of the Court of Appeals is reversed. The judgment of the district court is affirmed.

DAVIS, J., not participating.

TERRY L. BULLOCK, District Judge, assigned.

ALLEGRUCCI, J., dissenting: I disagree with the majority's interpretation of K.S.A. 21-4303(b) and K.S.A. 21-4302(5). I agree with the principles of statutory construction stated in Syllabus

§§ 1 and 2, but not with the majority's application of them in the present case. I agree with the Court of Appeals that, since the State failed to establish that the residence was a gambling place within the meaning of K.S.A. 21-4302(5), the defendants' convictions must be reversed.

The majority's interpretation of K.S.A. 21-4303(b), that proof the residence had previously been used for gambling or that gambling is "one of its principal uses" is not required, converts a home, school, church, monastery, or nursing home into a "gambling place" if on one occasion bets or offers to bet are made therein. Since gambling is making a bet under 21-4303(a), such an interpretation renders the definition of a "gambling place" in K.S.A. 21-4302(5) superfluous.

I do not find the statute to be clear and unambiguous; however, the majority's finding that, since the statute is clear and unambiguous, the court "*must* give effect to the legislative intent therein expressed rather than make a determination of what the law should or should not be [and that] no room is left for statutory construction" is misleading. (Emphasis added.) In *Todd v. Kelly,* 251 Kan. 512, 513, 837 P.2d 381 (1992), the United States Court of Appeals for the Tenth Circuit certified a question concerning the interpretation of K.S.A. 40-3422. The pertinent part of that statute to be interpreted was "the proceedings shall be stayed on appeal by the filing of a supersedeas bond in the full amount of the judgment against the health care provider signed by the commissioner of insurance as administrator of the health care stabilization fund without surety or other security." Federal District Judge Patrick F. Kelly held the statutory provision was clear, unambiguous, and mandatory, notwithstanding K.S.A. 1991 Supp. 40-3403(e), which set a maximum liability of the fund of $3,000,000. We responded:

"We now turn to the issue raised by the certified question. We agree with the trial judge that K.S.A. 40-3422, when read in isolation, is clear and unambiguous and appears to require a supersedeas bond in the full amount of the judgment. However, as the foregoing rules and authorities clearly demonstrate, such a simplistic and narrow reading of the statute is not available to us. K.S.A. 40-3422 may not be read in isolation but may only be considered in connection with the other provision of the Health Care Provider Insurance Availability Act, K.S.A. 40-3401 *et seq.* (the Act)." 251 Kan. at 516.

Notwithstanding that the statute is clear and unambiguous, we did not give effect to the legislative intent as expressed therein but, rather, looked to the entire Act and the legislative history of the original Act and its numerous amendments. We concluded that K.S.A. 40-3422 cannot be construed to require the Fund to post an appeal bond in excess of its maximum liability under 40-3403(e). 251 Kan. at 519-20. We noted, in reaching this conclusion, that courts are given exceptional leeway in interpreting statutes requiring appeal bonds. 251 Kan. at 525.

Here, we are interpreting a criminal statute, which we must strictly construe in favor of the defendants. Interpreting K.S.A. 21-4303(b) in that manner supports the Court of Appeals' interpretation. I do not find that interpretation to be unreasonable and insensible in effectuating the legislative design and true intent. This is made evident by the Judicial Council notes following K.S.A. 21-4303. In my opinion, the majority's interpretation does not express the true intent of the legislature.

I must therefore dissent, and I would affirm the Court of Appeals and reverse the district court.

ABBOTT, J., dissenting: I concur in the dissents of Justice Allegrucci and Judge Bullock.

I write separately to express my concern that this case requires individuals to interpret the law contrary to the expressed intent of the experts who wrote the law, explained it to the legislature in writing, and published their explanation.

My primary concern in this case is that K.S.A. 21-4303 and the Judicial Council Comment are, with two exceptions, exactly as the Advisory Committee on Criminal Law of the Kansas Judicial Council wrote them and presented them to the legislature in writing. The two exceptions are that the original statutory numbers have been changed and "conducting lotteries" as set out in the original Judicial Council notes was edited to read "conduct lotteries."

For many years I have observed the legislature function. Legislators are extremely busy and must necessarily rely upon experts in drafting highly technical laws. It is impossible for any one legislator to read all proposed legislation with the care and at-

tention that is given legislation in the "real world" after its enactment.

For example, there are some 555 Kansas comments and Judicial Council notes in the criminal law and criminal procedure section alone.

There are comments to Articles 60 through 74 of Chapter 17 of the Kansas Corporation Code. These are the explanations presented in Senate Bill 5 prior to the adoption of the Code. Six appellate court decisions cite and rely upon these comments.

The Uniform Consumer Credit Code is accompanied by comments by Barkley Clark and later by Paul B. Rasor that were written after enactment. They were, however, written by authors who aided in the drafting and who actively advised legislative subcommittees on the subject. We also have cited and relied upon these comments six times.

The Kansas Consumer Protection Act also is accompanied by comments Barkley Clark prepared. We have relied upon and followed these comments eight times. Both the Consumer Credit Code and the Consumer Protection Act are so highly technical that without expert help most legislators (and most judges) would be lost in the subject.

The Uniform Commercial Code comments were prepared by Barkley Clark, Paul B. Rasor, and the legislative committee, and interested legislators had access to these comments prior to the adoption of the Code. We have cited and relied upon a number of these comments.

I point out these examples to emphasize their importance in ascertaining legislative intent in adopting the legislation. I have no quarrel with the concept that the legislature makes the law and an individual or committee cannot change what the legislature clearly has made law.

Our United States Supreme Court recently has filed an opinion concerning whether comments to federal sentencing guidelines that Congress has not approved are binding upon federal courts. Our Supreme Court held the comments that explain or interpret a sentencing guideline are authoritative *unless* the comments violate the Constitution or a federal statute, or are inconsistent with, or a plainly erroneous reading of, the guidelines. *Stinson*

*v. United States*, 508 U.S. _____, 123 L. Ed. 2d 598, 113 S. Ct. 1913 (1993).

I would adopt that reasoning in Kansas. If so adopted, it seems to me that one who wanted to gauge one's conduct by K.S.A. 21-4303(b) would ask, "What is a gambling place?" The comment, I repeat again, was written by the authors of the statute and approved by the Kansas Judicial Council; the statute with the comment was distributed to the lawyers, judges, and legislators in this state for their input and then submitted WITHOUT CHANGE to the legislature. The legislature admittedly did not adopt the comments, but the written comments were available to it and have remained available to it as a comment to the statute since 1969. Surely, in subsequent revisions of the criminal code the legislature assumed the act prohibited did not differ from the comment.

I therefore would hold "a gambling place" is sufficiently ambiguous that I would read the Judicial Council Comment to determine legislative intent. I would affirm the Court of Appeals and reverse the trial court.

BULLOCK, J., joins in the foregoing dissenting opinion.

BULLOCK, District Judge assigned, dissenting: First, I must respectfully disagree with the majority's construction of K.S.A. 21-4303(b) in which the explanatory notes of the Kansas Judicial Council, published by the legislature as footnotes to the statute, are consciously and purposely disregarded.

A prefatory word of explanation is in order. The Kansas Judicial Council was established by the legislature in 1927, L. 1927, ch. 187, §§ 1 *et seq.* (now K.S.A. 20-2201 *et seq.*). The Council consists of members of the appellate and trial benches, the House of Representatives, the Senate, and the bar of this court. From time to time the legislature requests that complicated legal issues be studied by the Council and its various subcommittees and that proposed statutes be drafted by the Council to clarify or correct legislatively perceived legal problems. Upon the conclusion of this often arduous and lengthy study of the problem by the Council, a statute, or set of statutes, is drafted and forwarded to the legislature for its consideration. Frequently, these statutory drafts are accompanied by lengthy and carefully prepared ex-

planatory notes, which are intended to assist the legislature in understanding and interpreting the proposed legislation and the effect its adoption would have on the law of Kansas.

Upon those occasions when the legislature elects to adopt the proposed statutes drafted by the Council, it frequently publishes the Council's explanatory notes as footnotes (or headnotes) to the statutory enactment, presumably as an aid to the bench, bar, and public in understanding what was intended by the enactment. (See K.S.A. 77-133[d] in which the legislature requires its Revisor of Statutes to publish such notes in the Kansas statute books.) The importance placed upon the accuracy and completeness of these notes by the *legislature's* Revisor (K.S.A. 1992 Supp. 46-1211), operating under statutory *legislative* mandate, is amply illustrated by the majority's own example of the pre-publication revision of the Council notes by the Revisor and Professor Wilson, Judicial Council draftsman, following the 1969 enactment of the Kansas Criminal Code. Clearly, the purpose of those revisions was to make the notes reflect legislative changes made in the statutes proposed by the Council at the time of legislative enactment. See *Arredondo v. Duckwall Stores, Inc.,* 227 Kan. 842, 610 P.2d 1107 (1980). In other words, the objective of the revision was to make certain the published notes accurately *explained* the modified statutes as actually enacted.

The practice of publishing explanatory Judicial Council notes with enacted statutes parallels the legislative practice of publishing the drafters' commentaries to the Uniform Commercial Code, K.S.A. 84-1-101 *et seq.,* and this court's practice in publishing the drafters' commentaries to the Model Rules of Professional Conduct, Kansas Supreme Court Rule 226 (1992 Kan. Ct. R. Annot. 238), both of which commentaries are routinely consulted in judicial constructions of the provisions they explain, always without the prior condition of ambiguity.

In the case at bar, the majority has held that K.S.A. 21-4303(b) is "clear and unambiguous" and that it is the law of this state that in such cases the court *must* apply the statute as written and *cannot* consult the explanatory Judicial Council notes to divine the intent of the legislature in adopting the statute, albeit virtually conceded by the majority that to do so would require

an opposite result in this case and undoubtedly in other cases in the future.

I do not disagree that there is authority in our decisions for the rule purportedly followed by the majority. Where I disagree is that it is our *only* authority, or for that matter that it is the *correct* or even "majority" rule of this court. Although I have not conducted an exhaustive search, I have reviewed the last 101 cases since 1965 in which the appellate courts of this state have consulted the explanatory notes of the Kansas Judicial Council in construing statutes to which those notes relate. Of those 101 cases, 2 apply the rule relied upon by the majority. *State v. Roudybush,* 235 Kan. 834, 846, 686 P.2d 100 (1984); *State v. Bagemehl,* 123 Kan. 210, 212-13, 515 P.2d 1104 (1973). On the contrary, in the remaining 99 cases, the court has simply referred to the notes in construing the statute, without any reference to a need to first find ambiguity. See, *e.g., State v. Warren,* 252 Kan. 169, 177, 843 P.2d 224 (1992); *State v. Grissom,* 251 Kan. 851, 889, 840 P.2d 1142 (1992); *State v. Jordan,* 250 Kan. 180, 183, 825 P.2d 157 (1992); *State v. Scott,* 250 Kan. 350, 358, 827 P.2d 733 (1992); *State v. Getz,* 250 Kan. 560, 565, 566, 830 P.2d 830 (1992). In both cases where the precondition of ambiguity is mentioned, the statute in issue is construed *contrary* to the explanatory note. In the remaining 99 cases where no ambiguity is required to consult the note, 95 cases construe the statute *consistent* with the note; the four exceptions are: *State v. Noah,* 246 Kan. 291, 293-94, 788 P.2d 257 (1990); *State v. Cathey,* 241 Kan. 715, 723, 741 P.2d 738 (1987); *City of Junction City v. Lee,* 216 Kan. 495, 503, 532 P.2d 1292 (1975); *State v. Wilson,* 11 Kan. App. 2d 504, 506-07, 728 P.2d 1332 (1986). In no cases has the court invoked the ambiguity requirement, found an ambiguity, and then construed the statute *consistent* with the explanatory note!

So what is the law of Kansas concerning whether the trial bench, bar, and public can rely on the Judicial Council notes in interpreting statutes to which they apply? Is it the rule that one is *usually* safe in relying on the explanatory notes, except for those occasional cases where a different result is judicially desired? I trust not.

In my view, Judicial Council notes, like any other legislatively published explanatory notes, or commentaries, should *always* be consulted by the court, as they undoubtedly are by the trial bench, bar, and public alike, in construing and interpreting any statutory enactment. Further, in my view, the appellate judicial construction made as a result thereof should then be at least arguably *consistent* with those notes and commentaries. To do otherwise is to create judicially crafted traps for the unwary. The thought of enticing the citizenry to *usually* rely upon the notes, but then *occasionally* "tagging them out" when they do, especially where the subject is a *crime,* offends my notion of due process and fair play. In my view, clear prior notice of that which is proscribed by the criminal law is such a fundamental element of due process as to no longer require the citation of authority.

Second, turning to the statutes in question, I also respectfully disagree with how they have been construed by the majority, perhaps even without regard to the Judicial Council notes, but especially when the notes are considered.

K.S.A. 21-4303 provides:

"Gambling is: (a) Making a bet; or (b) entering or remaining in a gambling place with intent to make a bet, to participate in a lottery, or to play a gambling device. Gambling is a class B misdemeanor."

K.S.A. 21-4302(5) provides:

"A 'gambling place' is any place, room, building, vehicle, tent or location which is used for any of the following: Making and settling bets; receiving, holding, recording or forwarding bets or offers to bet; conducting lotteries; or playing gambling devices. *Evidence that the place has a general reputation as a gambling place or that, at or about the time in question, it was frequently visited by persons known to be commercial gamblers or known as frequenters of gambling places is admissible on the issue of whether it is a gambling place.*" (Emphasis added.)

If a single gambling event (such as the poker party in the case at bar) converts *any place* to a "gambling place," as the majority has held, why was the italicized sentence of K.S.A. 21-4302(5), above, added by the legislature to the definition? Does this not *at least* create an ambiguity which, even under the majority's view, would allow the court to consult the notes to K.S.A. 21-4303(b), where we would learn that a "gambling place" is *"a*

*structure, one of whose principal uses is for making and settling bets"?*

The problem created by the majority's construction of these statutes is evident in Justice Allegrucci's dissent, where he correctly observes that a "home, school, church, monastery, or nursing home" can be converted into a "gambling place" if on one occasion bets or offers to bet are made therein. Note that no *actual bet* is even required! In K.S.A. 21-4303(b) it is a crime to enter a "gambling place" with the *intent* to make a bet. The majority has held *any place* is a "gambling place" if one poker party or other gambling event occurs (perhaps requiring two or more bets). "Gambling" is defined by K.S.A. 21-4303(b) as entering a "gambling place" *intending* to bet.

Thus, *any place* into which a person comes offering to make bets becomes a "gambling place" whether or not the bets are actually accepted.

If this result seems absurd, consider what occurs when K.S.A. 21-4304 is added to the mix, as it will be in future cases. This statute makes it a *felony* for someone to "operate" a "gambling place." Under the majority's opinion, a person could come into my chambers *offering* to bet me and my court reporter lunch on next Saturday's game, and whether or not these offers to bet are ever accepted, my chambers have been converted into a "gambling place." In managing my chambers on a regular daily basis, have I then "operated" such a "gambling place" and in so doing committed a class E felony?

The court has held "a statute should never be given a construction that leads to uncertainty, injustice, or confusion," or that would lead to an absurd result. *State v. Howard,* 235 Kan. 236, 247, 679 P.2d 197 (1984).

All of the problems described in this opinion could be rather simply and easily avoided if the majority would just consider both the statutes and the Council notes and find that a "gambling place" is something more than any place a single gambling event (such as the poker party at bar) occurs.

The majority concludes this construction would "insert an additional element of proof." Again, I respectfully disagree. The *element* is "entering a gambling place." The italicized sentence

of K.S.A. 21-4302(5) and the notes to K.S.A. 21-4303 simply *define* what a "gambling place" is.

Before concluding this opinion, perhaps it is important to observe that none of the foregoing should be read to mean that what the defendants did in the case before us was "right" or even "legal," for that matter. They came to the location in question to bet, and bet they did. That, of course, is a crime under K.S.A. 21-4303(a). But that is not the crime with which they were charged. They were charged with entering a "gambling place" and, in my view, this has not been proved.

I must therefore respectfully dissent, and like Justice Allegrucci, I would affirm the Court of Appeals and reverse the district court.