(888 P.2d 861)

No. 71,040

STATE OF KANSAS, *Appellee*, v. KELLY M. DUFF, *Appellant.*

—

Opinion filed January 20, 1995.

*Edward G. Collister, Jr.,* special appellate defender, and *Jessica R. Kunen,* chief appellate defender, for appellant.

*Bruce E. Moore,* assistant county attorney, *Julie McKenna,* county attorney, and *Robert T. Stephan,* attorney general, for appellee.

Before LARSON, P.J., LEWIS, J., and JOHN ANDERSON III, District Judge, assigned.

LARSON, J.: Kelly M. Duff appeals from the finding of the Saline County District Court that he is not eligible for retrospective application of the sentencing guidelines after a K.S.A. 1993 Supp. 21-4724(d) hearing.

This is a companion case to *Duff v. Stotts* (No. 71,454, this day decided). The legal issues raised in the companion case have no bearing on this appeal.

This case is complicated because it is an early guidelines case involving subsequent offenses without direct statutory direction. A brief factual background will be helpful in resolving the issues raised.

Duff was first convicted on June 6, 1988, in case No. 88CR576 in Saline County District Court of unlawful use of a financial card and felony theft. He was sentenced to a one- to five-year term on each count, to be served concurrently. He was incarcerated from December 7, 1988, until November 10, 1992, when he was paroled.

On April 14, 1993, Duff pled guilty to one count of felony theft, a class E felony; one count of flee and elude, a class B misdemeanor; and one count of reckless driving, an unclassified misdemeanor. Duff was sentenced on May 24, 1993, to one to five years for the felony theft, six months for the flee and elude, and 30 days for the reckless driving. The sentences were ordered to run concurrently with each other but consecutive to the 1988 sentences.

On August 13, 1993, the Department of Corrections (DOC) issued a sentencing guidelines report showing conversion of the 1988 and 1993 sentences to consecutive sentences totalling 15 months. It is not clear how the DOC determined a "sentence begins date" of April 19, 1992, but the report concluded that, after considering good time credit, Duff was eligible for release on April 19, 1993.

On September 10, 1993, the State moved for a hearing, objecting to the DOC guidelines report. This request was mishandled by the DOC, which released Duff to post-release supervision on September 20, 1993.

After a hearing, the trial court order was filed October 26, 1993, finding (1) the 1993 sentence should not begin to run until the date of sentencing, (2) because Duff was on parole at the time of his 1993 offense he was not entitled to the presumption of probation and was required to serve his 1993 sentence, and (3)

Duff was not entitled to retrospective application of the sentencing guidelines because he had committed a new felony while on parole. When informed that the DOC had erroneously released Duff, the trial court directed the Saline County attorney to cause a notice to appear to issue to Duff to require him to appear and show cause why he should not be remanded to the DOC's custody to serve the balance of the sentence previously imposed.

On November 2, 1993, the DOC took Duff back into custody and returned him to Norton County. This gave rise to the writ of habeas corpus described in the companion case.

On November 18, 1993, the trial court issued a nunc pro tunc order granting Duff credit for the time spent in custody between January 19, 1993, and sentencing on May 24, 1993, but not changing any other portions of the previous order.

On November 30, 1993, the Saline County trial court received a letter from the DOC requesting clarification of the nunc pro tunc order, informing the court Duff was imprisoned in Norton, and stating he would remain in custody until the end of his sentence under the pre-July 1, 1993, law rather than attend a further hearing. The trial court responded by a letter stating, "I believe the Department of Corrections is correct in its interpretation of the status of Mr. Duff."

Duff appeals.

Duff contends the sentencing guidelines were erroneously interpreted, resulting in an improper sentence. In the alternative, he argues that if the guidelines do not apply, a motion to modify was erroneously not ruled upon.

An argument can be made that the trial court's direction that Duff be issued a notice to appear and show cause why he should not be remanded to custody makes this appeal interlocutory. While we have the duty to question jurisdiction on our own motion, *Snodgrass v. State Farm Mut. Auto. Ins. Co.*, 246 Kan. 371, 373, 789 P.2d 211 (1990), the facts here, and from the companion case, show Duff was returned to custody and the trial court indicated its direction for a show cause hearing should be ignored. It would be futile to remand for action which has already taken

place. Judicial economy requires that we reach and decide the issues presented.

We must remember this was an early guidelines case where retroactivity was rejected in part because the DOC's interpretation was felt to be contrary to common sense. Taken to its logical conclusion, the DOC's conversion of Duff's sentences would result in him serving the complete sentence for his 1993 offenses before the trial court had pronounced the sentences thereon. Faced with such an "absurd" result, the trial court held retroactivity should not be applied.

The Kansas Supreme Court has now held in *State v. Gonzales*, 255 Kan. 243, Syl. ¶ 1, 874 P.2d 612 (1994), that the application of the sentencing guidelines retroactivity provisions is mandatory. *Gonzales* construes K.S.A. 1993 Supp. 21-4724 (b)(1), which states:

"Except as provided in subsection (d), persons who committed crimes which would be classified in a presumptive nonimprisonment grid block on either sentencing grid . . . pursuant to the provisions of subsection (c) of K.S.A. 1993 Supp. 21-4705 and amendments thereto, if sentenced pursuant to the Kansas sentencing guidelines act, and were sentenced prior to July 1, 1993, shall have their sentences modified according to the provisions specified in the Kansas sentencing guidelines act."

Because retroactivity under *Gonzales*, 255 Kan. 243, Syl. ¶ 5, is deemed mandatory, the only question in this case is whether Duff "committed crimes which would be classified in a presumptive nonimprisonment grid block on either sentencing grid." See K.S.A. 1993 Supp. 21-4724(b)(1).

Our Supreme Court recently stated in *Gonzales*:

"The legislative intent in adopting the retroactivity provisions of the Sentencing Guidelines Act was to make conversion mandatory. The provisions in K.S.A. 1993 Supp. 21-4724(d) require the trial court to settle any disputes concerning criminal history and to impose a sentence within the correct grid box just as if the trial judge were imposing an original sentence under the guidelines. The trial judge may consider any information available as of the original sentencing date that he or she could have considered in imposing an original sentence under the guidelines. . . . Any departure must be consistent with the departure provisions of the guidelines, and a parole or probation violation after the original sentencing date may not be considered in converting the sentence."

Any departure must be justified by the trial court by written findings and an order as required by the guidelines." *Gonzales*, 255 Kan. 243, Syl. ¶ 5.

Duff's 1988 crimes would be classified in presumptive non-imprisonment grid blocks. The 1988 convictions were for two severity level 9, nonperson felonies. He had no criminal history and would therefore be subject to a presumed six-month nonprison sentence for each conviction.

Duff's 1993 crimes would also be classified as presumptive non-imprisonment offenses. The 1993 conviction was for a severity level 9, nonperson felony. Although he was convicted of other offenses, those offenses were less severe so the level 9 felony would be the base sentence. At the time of his 1993 conviction, Duff had a criminal history of two nonperson felonies—the 1988 convictions. The trial court correctly ruled that the alleged Arizona violations were not properly proved and that ruling is not being appealed. The severity level 9, nonperson felony of the 1993 conviction coupled with the criminal history carries a presumptive nonprison sentence of nine months.

Because all of Duff's convictions fall within presumptive non-imprisonment grid blocks, retroactivity is mandatory. The trial court's order that retroactivity was not appropriate because the 1993 offenses were committed while on parole is erroneous. Eligibility for retroactivity is based upon the classification of the offense in the grid blocks only, K.S.A. 1993 Supp. 21-4724(d), and not on the actual disposition made at the time of sentencing or other possible dispositions permitted by the sentencing guidelines act. See *Gonzales*, 255 Kan. at 250 (retroactivity mandatory even though court determined Gonzales should not be placed on presumptive probation; no excuse to refuse to convert); see generally K.S.A. 1993 Supp. 21-4603e (permitting, but not mandating, imprisonment for presumptive nonimprisonment offenses committed while on parole if parole is revoked).

An order of reversal and remand to apply retroactivity is required. However, this raises the larger question of how converted sentences for multiple convictions are aggregated. Because this issue has been briefed and will affect the trial court's determination on remand, we will consider this controversy.

The trial court is required to determine the appropriate guidelines conforming sentences for both the 1988 and 1993 convictions, considering all the factors the court could have considered if the guidelines had been in effect when the original sentences were imposed. The issues are (1) whether Duff's total converted sentence is measured by adding the 1988 converted sentence to the 1993 converted sentence since the 1993 sentence was originally imposed as consecutive to the 1988 sentence and (2) if so, whether this combined sentence should be measured from the imposition of the 1988 sentence. If this is the proper calculation, as Duff claims, the practical technical effect is that Duff began serving his 1993 sentence before he committed his 1993 crime and would have served his 1993 sentence completely before the sentence was pronounced. Duff argues this result, although difficult to comprehend, is not inconsistent with the legislature's purpose of relieving our prison system of the burdens of nonviolent offenders. Duff relies on the following wording from *Gonzales*:

"As we view the Act, the legislature had several things in mind. First and foremost, the legislature was faced with an overcrowded prison system and had a choice of building and maintaining additional prison facilities at a time when the State was and is financially hard-pressed to maintain its existing prison system or of devising a method of reducing the inmate population. The legislature very clearly opted to reduce the prison population and devised a method to incarcerate serious offenders and to handle less dangerous offenders by nonprison sanctions or by imposing shorter sentences." 255 Kan. at 249.

Even though the construction proposed by Duff might be consistent with the goal of reducing the overcrowding in the prisons, judicial interpretations must be reasonable and sensible to effectuate legislative design and the true intent of the legislature. *State v. Schlein*, 253 Kan. 205, Syl. ¶ 2, 854 P.2d 296 (1993). In construing the sentencing guidelines act, the Kansas Supreme Court further held in *Gonzales:*

"In determining legislative intent, courts are not limited to a mere consideration of the language used but look to the historical background of the enactment, the circumstances attending its passage, the purpose to be accomplished, and the effect the statute may have under the various constructions suggested." 255 Kan. 243, Syl. ¶ 3.

Under the construction suggested by Duff, a criminal incarcerated or paroled in the first half of 1993 could have determined

the excess time he or she had served under the old sentencing system, committed a crime with a punishment under the guidelines less than the excess time he or she had served, and known there would be no punishment. As the trial court noted, such a construction is absurd and inconsistent with the purpose of punishment within our criminal justice system.

There is no statutory wording or Kansas case which provides any guidance to this issue; however, it is consistent with the rule that when an earlier sentence is set aside, a later sentence which runs consecutively to the earlier sentence begins to run from the date of the imposition of the later sentence. See *Jamison v. Cupp*, 27 Or. App. 109, 555 P.2d 475 (1976). Jamison was convicted in 1971 and sentenced to serve eight years. In 1974, he was convicted of another crime and sentenced to six months to be served consecutive to the previous sentence. The 1971 conviction was then set aside, and the issue became what date a consecutive sentence is deemed to commence when the underlying conviction giving rise to the initial sentence is vacated. 27 Or. App. at 111.

According to *Jamison*, courts consistently rely upon "traditional notions of fair play which underlie the due process concept and the absence of any but technical reasons to the contrary." The Oregon court declined to be the first court to adopt the approach that the later sentence begins on the date the earlier consecutive sentence was vacated and adopted the date of imposition approach. 27 Or. App. at 112-13.

Other states have adopted this approach. See *Green v. State*, 245 A.2d 147 (Me. 1968) (based on state statute, fair play required that where a prior sentence is set aside because it was void or voidable, the second sentence imposed at a later time must be moved forward and commence upon the first day of actual incarceration after its imposition); *Potter v. State*, 263 N.C. 114, 139 S.E.2d 4 (1964) (better and more humane view is that when a prior sentence is invalidated, the latter sentence which was to begin at the expiration of the earlier sentence commences from the day it was imposed).

It makes no sense to us that the legislature would intend that an incarcerated criminal could "bank" time to be applied to a

sentence imposed for a crime not yet committed. Because guidelines were deemed to be in effect at the time of Duff's 1993 sentence, such sentence should start running when it was imposed, not many months earlier. Moreover, when converting a sentence, the trial court is to determine the sentence anew, and there is no reason to require that the court be bound by an original decision to impose a sentence consecutively.

The Supreme Court's analysis in *Gonzales* mandates that a retroactive sentence can no more properly begin before it is imposed than could an original sentence. We hold the trial court should utilize this reasoning in making the ordered retroactivity.

Finally, we need not address Duff's argument concerning the trial court's failure to rule on his motion to modify. It was a second motion to modify not filed within 120 days of the imposition of sentence, which the trial court was without jurisdiction to consider. See *State v. Smith*, 254 Kan. 16, Syl. ¶ 1, 864 P.2d 1208 (1993).

Reversed and remanded for further proceedings consistent with this opinion.