The Honorable Gerald "Jerry" Karr State Senator, 17th District State Capitol, Room 347-N Topeka, Kansas 66612
Dear Senator Karr:
As senator for the seventeenth district, you request our opinion regarding whether the Reading fire benefit district is obligated to reimburse Lyon county for direct election expenses incurred when the Lyon county election officer conducted a question submitted election for the Reading fire benefit district.
The Reading fire benefit district is composed of territory in Lyon and Osage counties. In 1993, the board of directors of the Reading fire benefit district adopted a charter resolution attempting to remove the state-mandated tax lid. A valid petition seeking to bring the resolution to an election was filed and a special election was conducted November 2, 1993. The resolution was approved by the electors four to one. Shortly after the election, a statement requesting reimbursement of the direct election expenses was submitted by the Lyon county clerk to the board of directors of the Reading fire benefit district. The board of directors refused to reimburse the county because its members believed the petition seeking the election was the result of erroneous information disseminated by the Lyon county clerk. On February 16, 1995, the Lyon county counselor submitted a second statement requesting reimbursement for the direct election expenses incurred by Lyon county when the question submitted election was conducted November 2, 1993.
K.S.A. 25-2201 et seq. provide for reimbursement to the county of direct election expenses. K.S.A. 25-2201 provides in part:
 "(a) Election expenses of all primary, general and question submitted elections which are township, city, school or community junior college elections shall be paid by the boards of county commissioners of the respective counties. Election expenses of all public special districts for which it is provided by law that the county election officer, county clerk, or county election commissioner is to conduct the election, shall be paid by the boards of county commissioners of the respective counties, and the provisions of this act shall apply thereto in the same manner as the same apply to township, city, school, and community junior colleges.
 "(b) The direct expenses of any primary, general and question submitted elections which are township, city, school or community junior college elections, except for any such election held on a day when every registered voter in the county is authorized to vote at one election or another, shall be reimbursed to the county by the township, city, school or community junior college district for which such expenses are incurred. Indirect expenses of such elections shall not be reimbursed to the county. . . ." (Emphasis added.)
The interpretation of a statute is a matter of law and it is the function of the court to interpret the statute to give it the effect intended by the legislature. State v. Schlein,253 Kan. 205, 209 (1993). In determining legislative intent, courts are not limited to a mere consideration of the language employed but may properly look into historical background of the enactment, the circumstances attending and subsequent to its passage, the purposes to be accomplished and the effect the statute may have under the various constructions suggested. Steele v. City ofWichita, 250 Kan. 524, 529 (1992).
The purposes for enacting K.S.A. 25-2201 are apparent from the provisions of the statute. The county is responsible for payment of election expenses. K.S.A. 25-119; 25-2201. However, in many instances the county exercises little control over when elections are called and conducted. K.S.A. 25-2201 et seq. provide a mechanism for counties to recoup the direct election expenses incurred by the county in the conduct of elections for governing boards which exercise authority over only a portion of the electorate of the county, thereby permitting the county some control over the election expenses it incurs. By providing that reimbursement is not required if all electors of the county vote in any election conducted on a given date in the county, the legislature encourages governing boards to coordinate elections.
The legislature has established various districts which serve specialized purposes. In K.S.A. 19-270, it is recognized that a special benefit district includes any: sewer district; water district, rural water district and water supply district; fire district; improvement district; industrial district; and drainage district. Districts of this type are generally governed by a board of elected members and in some instances may take action subject to approval by the electorate of the district. Because K.S.A. 19-270 and 31-301 [under which Reading fire benefit district was created] were part of the same legislative act, see
L. 1986, ch. 70, secs. 1, 33, it is our opinion that the special benefit districts referred to in K.S.A. 19-270 are among the public special districts referred to in K.S.A. 25-2201. Therefore, a fire district is subject to K.S.A. 25-2201 et seq. and is obligated to reimburse the county for direct election expenses incurred by the county when the county election officer conducts a question submitted election for the fire district.
It has been advocated that the Reading fire benefit district is not a fire district as generally recognized in state statute. According to information provided, the Reading fire benefit district was established in 1963 pursuant to G.S. 31-301 et seq. Because a stalemate on the board of directors of the Reading fire benefit district impeded any action by the board, legislation altering the make-up of the board was sought. In L. 1992, ch. 161, sec. 1, the legislature repealed the provisions designating boards of common school districts and rural high school districts as the board of directors for fire benefit districts, modified provisions authorizing boards of education of unified school districts to act as the board of directors, and enacted provisions establishing a five-member board of directors for "a benefit district . . . located partly within Osage county and partly within Lyon county," the Reading fire benefit district. K.S.A.31-302.
While the legislature altered the membership of the board of directors of the Reading fire benefit district, the legislature did not effect the establishment or continuation of the Reading fire benefit district. Resident property owners within the Reading fire benefit district were not obligated to petition for establishment of the fire benefit district after 1992. See K.S.A.31-301. The five-member board of directors of the Reading fire benefit district continued to exercise the authority previously exercised by the two-member board. Therefore, despite the fact the board of directors of the Reading fire benefit district was altered in 1992, the Reading fire benefit district remained a fire district as generally referred to in state statute. The Reading fire benefit district as a fire district is subject to K.S.A.25-2201 et seq., and is obligated to reimburse the county for direct election expenses incurred by the county when the county election officer conducted a question submitted election for the Reading fire benefit district.
The obligation of public special districts to reimburse the county for direct election expenses applies to those elections for which it is provided by law that the county election officer, county clerk, or county election commissioner is to conduct the election. The election conducted for the Reading fire benefit district was the submission of a resolution of the fire benefit district removing the fire benefit district from the aggregate tax levy limitations, K.S.A. 79-5021 et seq., and authorizing assessment of a mill levy as authorized under K.S.A. 1994 Supp. 19-3610. See
Attorney General Opinion No. 90-11.
K.S.A. 1994 Supp. 79-5036 provides:
 "(c) The governing body of any [taxing subdivision other than a city or county] subject to the provisions of K.S.A. 79-5021 to 79-5033, inclusive, may elect, in the manner prescribed by and subject to the limitations of K.S.A. 19-101b, and amendments thereto, insofar as such section may be made applicable, to exempt such subdivision from the provisions of K.S.A. 79-5021 to 79-5033, inclusive, or to modify the provisions thereof."
Elections conducted pursuant to K.S.A. 19-101b "shall be conducted in the same manner as are elections for officers of such county." K.S.A. 19-101b. Elections conducted pursuant to K.S.A. 19-101b
are conducted by the county election officer. Because the question submitted election conducted for the Reading fire benefit district was by law conducted by the county election officer, the Reading fire benefit district is obligated to reimburse the county for direct election expenses incurred by the county when the county election officer conducted a question submitted election for the Reading fire benefit district.
It has also been advocated that because of the passage of time, the Reading fire benefit district may not be obligated to reimburse the county for the direct election expenses. With this we cannot agree. As noted above, the election was conducted November 2, 1993. K.S.A. 60-512 provides that actions based upon a liability created by a statute other than a penalty or forfeiture must be brought within three years. While it is likely that certain direct election expenses were incurred by the county prior to November 2, 1993, none would have been incurred prior to adoption by the Reading fire benefit district of resolution 93-01 in 1993. Because of the time frame involved, it is not necessary for us to determine the point in time at which the Reading fire benefit district became liable for reimbursement of each election expense incurred by the county directly related to the question submitted election. The county remains within the time permitted under K.S.A. 60-512 to seek reimbursement of direct election expenses from the Reading fire benefit district pursuant to K.S.A.25-2201.
K.S.A. 25-2204 sets forth a procedure for appeal of statements for reimbursement of direct election expenses. Any subdivision of government which receives a statement of apportionment of election expenses from a county election officer and is aggrieved thereby "may within thirty (30) days after the receipt of such statement appeal to the state election board specifying such changes as it believes should be made in such statement." K.S.A. 25-2204. A subdivision of government is aggrieved by receiving a bill it feels it does not owe just as much as by one it thinks is too high. State, ex rel., v. Unified School District, 218 Kan. 47, 49
(1975). The statutory liability of a subdivision of government which fails to exercise its administrative appeal within the statutory time becomes fixed. Id. at 52. See also Attorney General Opinion No. 93-107. Because the Reading fire benefit district is a public special district subject to K.S.A. 25-2201 etseq., and the Reading fire benefit district failed to exercise its right of appeal under K.S.A. 25-2204, the Reading fire benefit district is liable for apportionment and reimbursement of direct election expenses incurred by Lyon county when the Lyon county election officer conducted a question submitted election for the Reading fire benefit district.
Very truly yours,
 CARLA J. STOVALL Attorney General of Kansas
 Richard D. Smith Assistant Attorney General
CJS:JLM:RDS:jm