(728 P.2d 1332)
No. 58,762

STATE OF KANSAS, *Appellee*, v. MARCUS WILSON, *Appellant*.

—

Opinion filed August 21, 1986.

*Lucille Marino*, appellate defender, and *Benjamin C. Wood*, chief appellate defender, for appellant.

*Sally Davis Pokorny*, county attorney, and *Robert T. Stephan*, attorney general, for appellee.

Before BRAZIL, P.J., MEYER, J., and WILLIAM F. LYLE, JR., District Judge, assigned.

LYLE, J.: Marcus Wilson appeals his conviction of presenting a false claim, in violation of K.S.A. 21-3904, and of presentment of claims not incurred, in violation of K.S.A. 75-3202.

The first issue is whether it was improper to charge and convict defendant under both K.S.A. 75-3202 and K.S.A. 21-3904. Defendant argues, in this issue of first impression, that K.S.A. 75-3202 is a specific statute and K.S.A. 21-3904 is a general statute, thus, K.S.A. 75-3202 controls. K.S.A. 75-3202 provides:

"Any state official or employee who shall present an account for expenses incurred which were not in fact incurred, or shall present an account in excess of expenses actually traveled in the discharge of public duties, shall be guilty of a misdemeanor and shall be fined not to exceed one thousand dollars or imprison-

ment in the county jail not to exceed six months, or both such fine and imprisonment, and upon conviction shall forever thereafter be disqualified from holding any office of profit or trust under the laws of the state of Kansas."

K.S.A. 21-3904 provides:

"Presenting a false claim is knowingly and with intent to defraud presenting a claim or demand which is false in whole or in part, to a public officer or body authorized to audit, allow or pay such claim.

"Presenting a false claim for fifty dollars ($50) or more is a class E felony. Presenting a false claim for less than fifty dollars ($50) is a class A misdemeanor."

The State contends these statutes are complementary. The State argues that since a conviction under K.S.A. 21-3904 requires the prosecution to prove a specific intent to defraud, while no showing of intent is required under K.S.A. 75-3202, the offenses are separate and distinct and defendant was properly convicted under both statutes. See, *e.g.*, Vernon's Kansas Crim. C. § 21-3905, Authors' Comments, p. 149 (1971).

In arguing that K.S.A. 75-3202 and K.S.A. 21-3904 are complementary, the State contends that the charges were not multiplicitous. "Multiplicity" in a criminal action is the charging of a single offense in several counts. *State v. Freeman*, 236 Kan. 274, 280, 689 P.2d 885 (1984); *State v. Dorsey*, 224 Kan. 152, 154, 578 P.2d 261 (1978). See also *State v. Hicks*, 11 Kan. App. 2d 76, 79-80, 714 P.2d 105 (1986). In the present case, defendant does not raise the issue of multiplicity. The proper issue in this case is whether K.S.A. 75-3202 is a specific statute which controls over a more general statute, K.S.A. 21-3904. It appears that the State is actually contending that K.S.A. 75-3202 is not a specific statute and thus should not be the exclusive offense for which defendant could be convicted.

"[A] special statute prevails over a general statute *unless it appears that the legislature intended to make the general act controlling.*" (Emphasis in original.) *Seltmann v. Board of County Commissioners*, 212 Kan. 805, 811, 512 P.2d 334 (1973).

"Repeals by implication are never favored and a general and specific statute should be read together and harmonized wherever possible. But to the extent of repugnancy between a statute dealing generally with a subject and another statute dealing specifically with a subject, the specific statute is favored and controls. [Citations omitted.]" *State v. Makin*, 223 Kan. 743, 745, 576 P.2d 666 (1978).

See also *State v. Keeley*, 236 Kan. 555, 560, 694 P.2d 422 (1985).

" 'A statute which relates to persons or things as a class is a

general law, while a statute which relates to particular persons or things of a class is special.' " 212 Kan. at 810, quoting 82 C.J.S., Statutes § 163, p. 277.

K.S.A. 75-3202 is a specific statute because it pertains to a particular class, state employees, and addresses a specific subject, presenting an account for expenses not incurred.

Defendant relies on *State v. Kliewer*, 210 Kan. 820, 504 P.2d 580 (1972). In that case, Kliewer was convicted of turning back an odometer used for registering mileage on a motor vehicle contrary to K.S.A. 1971 Supp. 8-611, and of committing a deceptive commercial practice, K.S.A. 1971 Supp. 21-4403. The single act upon which both charges were based was turning back and resetting a car's odometer. The Kansas Supreme Court ruled that 8-611 is a specific statute, whereas 21-4403 "is general in its application, embracing a far greater range of activity pertaining to deception, fraud and misrepresentation of material fact." 210 Kan. at 826. The court concluded that the statutes were not repugnant to each other but, rather, could be harmonized because 8-611 dealt specifically with the deceptive practice for which Kliewer was charged, and 21-4403 dealt generally with the same deceptive practice. 210 Kan. at 826. The court held that Kliewer was charged and convicted on two counts for the same wrongdoing which constituted but one offense. Noting that a specific statute controls over a general statute, the court overturned Kliewer's conviction of committing a deceptive commercial practice in violation of 21-4403.

Defendant also relies on the Judicial Council comment following K.S.A. 21-3904, which was enacted subsequent to K.S.A. 75-3202. The comment provides in relevant part:

"Except for mileage and subsistence expenses (K.S.A. 75-3202), fraudulent claims against governmental agencies were prosecuted under general statutes relating to fraud, perjury, etc. The section, based on the Minnesota law, intended to expedite the prosecution of such offenses by providing a specific violation. *K.S.A. 75-3202 which has special application to false expense accounts by public employees probably need not be repealed in view of its limited scope.*" (Emphasis added.)

Defendant argues that this comment demonstrates that K.S.A. 75-3202 is a specific statute which is to be solely applied to cases involving false expense vouchers. Defendant notes that the purpose of K.S.A. 21-3904 was to expedite prosecutions for fraudulent claims against governmental agencies which previously had

to be pursued under more general fraud and perjury statutes. Defendant contends that claims involving mileage and subsistence expenses are exceptions to K.S.A. 21-3904 because they are expeditiously prosecuted under K.S.A. 75-3202. Defendant argues that, by retaining K.S.A. 75-3202, the legislature intended to exclude false mileage and subsistence claims from the operation of K.S.A. 21-3904 because the same subject is specifically covered by K.S.A. 75-3202.

The State argues that the legislature did not intend for state employees who file false expense vouchers to be convicted solely under K.S.A. 75-3202. Presenting a false claim over $50 in violation of K.S.A. 21-3904 is a class E felony, while a violation of K.S.A. 75-3202 is an unclassified misdemeanor. The State argues that the legislature did not intend that a misdemeanor conviction result when a state employee, who holds a position of trust and owes a fiduciary duty to his employer, files a false claim with the intent to defraud. According to the State, a person who owes no fiduciary duty to the State of Kansas could be convicted of a felony for the same act which could result in only a misdemeanor conviction if the accused were a state employee. The State contends that if the intent to defraud can be proven, the legislature intended to severely punish dishonest state employees by allowing a conviction under both statutes. It should be noted, however, that while K.S.A. 75-3202 provides for a misdemeanor sentence (fine of less than $1,000 and no more than six months' incarceration), it also contains a mandatory provision which forever precludes the offender from holding an office of profit or trust under the laws of Kansas.

We conclude that in the case at bar, the defendant, a state employee, was included in the particular class addressed by K.S.A. 75-3202 and that he committed the particular act which the statute made unlawful. K.S.A. 75-3202 is the specific statute which must control.

The next issue before the court is whether the district court erred in admitting the telephone bill of the probation office located in Coffeyville, Kansas.

As a court services employee, defendant was provided a calling card which enabled him to make business-related long distance phone calls. Charges for these calls were billed to and paid by Montgomery County. During cross-examination of defendant,

the prosecution introduced copies of the court services' office phone bill which included itemizations for calls made by defendant. The prosecution used the phone bills to impeach defendant's testimony. Defendant testified on direct examination that he arrived in Lawrence after 6:00 p.m. on November 9, 1984; however, the phone bill demonstrated that he made a call from Lawrence to Kansas City, Missouri, at 4:47 p.m.

Subsequently, the prosecution presented foundation testimony by Bessie Scofield, Clerk of the Montgomery County District Court. Scofield testified that the portion of the phone bills consisting of the itemized long distance phone calls are kept under her care and that they are kept in the regular course of her business. On cross-examination, Scofield stated that she had not prepared the records nor did she have personal knowledge concerning the accuracy of those records.

Defense counsel entered a timely objection, contending that the prosecution failed to lay a proper foundation for the admission of the telephone company's billing records. Defendant's motion was denied and the phone bills were admitted as State's Exhibit No. 10.

On appeal, defendant does not challenge the authenticity of the telephone records. See K.S.A. 60-464. Defendant argues that, while the custodian of the records from the phone company need not have testified, someone who was qualified by knowledge of the facts was required to identify the phone records.

"The admission into evidence of business records falls within the exception to the hearsay rule governed by K.S.A. 60-460(m) which provides for the admission of 'writings offered as memoranda or records of acts, conditions or events to prove the facts stated therein, if the judge finds that they were made in the regular course of a business at or about the time of the act, condition or event recorded, and that the sources of information from which made and the method and circumstances of their preparation were such as to indicate their trustworthiness.'" *Olathe Ready-Mix Co., Inc. v. Frazier,* 220 Kan. 646, 646-47, 556 P.2d 198 (1976).

See also K.S.A. 1985 Supp. 60-460(m).

"K.S.A. 60-460(m) does not require that the custodian of business records be called to lay the foundation facts for their admission into evidence. The foundation facts may be proved by any relevant evidence and the person making the entries in the records need not be called to authenticate them *if they can be identified by someone else who is qualified by knowledge of the facts.* The policy of this section is to leave it up to the trial court to determine whether the sources of information, method, and time of preparation reflect trustworthiness.

[Citation omitted.]" (Emphasis added.) *State v. Cremer*, 234 Kan. 594, 601, 676 P.2d 59 (1984).

See also *Olathe Ready-Mix Co., Inc. v. Frazier*, 220 Kan. at 647. Here, defendant argues that Scofield was without knowledge of the facts and thus her testimony was insufficient to warrant the admission of the phone records.

In *State v. Beasley*, 205 Kan. 253, 469 P.2d 453 (1970), *cert. denied* 401 U.S. 919 (1971), a pawnshop record signed by Beasley was admitted to show that Beasley purchased the handgun used in a murder. The Minnesota pawnshop was owned by a father and son. The father did not testify at trial but, rather, foundation testimony was presented by the son. The son testified that he brought the record of the sale of the gun with him from his place of employment and that he and his father worked together when the weapon was sold. The son identified the record and pointed out which entries were made by him and which were made by his father. The son entered the name, address, and permit number of their pawnshop. The father recorded the description of the purchaser who signed the record with the name S.E. Beasley, and recorded the date and time of the sale and the caliber, make and serial number of the gun. Our Supreme Court held that the son's testimony was sufficient to lay the foundation for the admission of the pawnshop record under K.S.A. 60-460(m) and that it was unnecessary for the father to be called because the son was qualified by knowledge of the facts. 205 Kan. at 256-57.

In the present case, Scofield was merely the recipient of the phone bill and had no knowledge of the facts underlying the record. In Kansas, while it is not always necessary to have the individual who actually made the record lay the foundation, in most cases, foundation testimony has been provided by someone who was a member of the organization which made the record. See *State v. Guhl*, 3 Kan. App. 2d 59, 60-61, 588 P.2d 957, *rev. denied* 225 Kan. 846 (1979).

*State v. Cremer*, 234 Kan. at 594, is the leading case in which a person outside the record-making organization was allowed to provide the foundation. Cremer argued that the evidence presented at his preliminary hearing was inadmissible hearsay and was thus insufficient to show probable cause to hold him for trial. Cremer, a filling station manager, was charged with absconding

with the filling station's receipts for a three-day period. Cremer's supervisor checked the oil company's account at a local bank and determined that the receipts for the three-day period had not been deposited. The oil company's comptroller, who supervised the making and keeping of the company's records, obtained the bank statements which showed that no deposits had been made. The comptroller was the sole person who provided foundation testimony concerning the bank statements. On appeal, the Kansas Court of Appeals held that, without foundation testimony from a representative of the bank, Cremer was precluded from inquiring into the possibility of an error on the part of the bank and, thus, the lower court erred in admitting the records under K.S.A. 60-460(m). *State v. Cremer*, 8 Kan. App. 2d 699, 700, 666 P.2d 1200 (1983), *aff'd* 234 Kan. 594, 676 P.2d 59 (1984). The Court of Appeals, however, upheld the conviction, finding there was still an adequate basis for finding probable cause. 8 Kan. App. 2d at 702. The Kansas Supreme Court affirmed the judgment of the Court of Appeals but not for the reasons stated by the Court of Appeals. 234 Kan. at 603. The Kansas Supreme Court held the Court of Appeals erred in concluding that the bank records were not admissible under K.S.A. 60-460(m). 234 Kan. at 601. Ruling that it was up to the trial court at the preliminary hearing to determine whether the method and circumstances surrounding the preparation of the statements were sufficient to indicate trustworthiness, the Kansas Supreme Court held that the oil company comptroller's testimony was sufficient to admit the bank records under K.S.A. 60-460(m). 234 Kan. at 602.

"It cannot be denied that the entries contained in bank statements are generated by the owner of the account. Bank statements are relied on every day in the business world to verify the account owner's financial transactions. We have no hesitancy in holding that bank statements made in the regular course of business and presented to the owner of the account as a record of account transactions are a trustworthy source of information and may be admitted under K.S.A. 60-460(*m*) as a part of the financial records of the owner of the account." 234 Kan. at 602.

Relying on *Cremer*, the State argues that telephone records are relied upon in the business world to verify telephone calls made by the user or subscriber and, thus, they are as trustworthy as bank records. Defendant seeks to distinguish *Cremer* on the basis that, unlike *Cremer*, the telephone records were not regularly relied upon for the purpose of verifying the phone calls of the court's employees.

While telephone records may not always be accurate, the telephone subscriber generally is able to verify the accuracy of the records. In this case, however, since calls by more than one person appeared on the record, the clerk of the district court, the subscriber, could not readily and independently verify the calls which were itemized on the record.

The defendant admitted making the calls in question. The only dispute surrounds the time when the calls were made. Arguably, a telephone company employee should be required to testify as to how the time of a call is recorded.

In *Cremer*, our supreme court stated that the bank statements were made and received in the regular course of business at or about the time of the act or event recorded. 234 Kan. at 602. In the present case, the trial court made no express determination as to whether the phone records were made or received in the regular course of business, nor did it make a determination as to their trustworthiness.

We therefore conclude that the telephone records were improperly admitted. We cannot find, however, that this erroneous admission prejudiced the defendant. It has repeatedly been held that "errors which do not affirmatively appear to have prejudicially affected the substantial rights of the party complaining, when substantial justice has been done, do not require reversal." *State v. Mitchell*, 234 Kan. 185, 196, 672 P.2d 1 (1983). Here, the phone records were used to impeach defendant's credibility. Since a conviction for presenting a false claim, K.S.A. 21-3904, requires a showing of intent to defraud, defendant's credibility was clearly at issue.

On the other hand, defendant provided several other bases for rational jurors to doubt his credibility. For example, defendant was mistaken as to the meetings in Wichita and Lawrence. Contrary to defendant's statements, Amy Cullom testified that she never told defendant there would be a meeting in Wichita on November 9, 1984. Further, defendant had received a copy of the minutes from a previous BCSOA meeting which stated that the November meeting was to be held on November 12, 1984. Defendant testified that he believed the date was a typographical error and changed the date to the 10th by wiping out the "2" with "correcto" tape, typing in a "0" and then photocopying the minutes which showed the altered date. Defendant admitted

lying to the county investigator during the investigation. Further, defendant submitted vouchers which overstated the amount of time he spent on county business.

In *Wilhoit v. State*, 638 S.W.2d 489 (Tex. Crim. 1982), the court erroneously admitted a telephone bill. Wilhoit argued that the error was not harmless because of the prejudicial effect it had on his credibility. The Texas appellate court held that, since the jury was given other bases for doubting Wilhoit's credibility, the error was harmless. 638 S.W.2d at 497.

The improper admission of the telephone record into evidence was harmless error as the jury had numerous other bases for doubting the defendant's credibility.

The last issue on appeal is whether the trial court erred in allowing the prosecution to use the Coffeyville court service office telephone records when the existence of such records had not been disclosed to the defendant. In view of our finding that the admission of the telephone records was harmless error, this issue will not be considered.

The defendant's conviction under K.S.A. 21-3904 is reversed. The defendant's conviction under K.S.A. 75-3202 is affirmed.