(796 P.2d 559)

No. 63,875

STATE OF KANSAS, *Appellee,* v. ROBERT L. MONTGOMERY, *Appellant.*

Opinion filed July 27, 1990.

*J. Patrick Lawless, Jr.,* assistant appellate defender, and *Jessica R. Kunen,* chief appellate defender, for appellant.

*Michael J. Price,* assistant district attorney, *Nick A. Tomasic,* district attorney, and *Robert T. Stephan,* attorney general, for appellee.

Before RULON, P.J., LARSON and GERNON, JJ.

LARSON, J.: Robert L. Montgomery appeals from his convictions by a jury of three counts of making a false writing contrary to K.S.A. 21-3711.

On June 15, 1988, Montgomery went to Jay Wolfe Honda in Kansas City, Kansas, with the intention of purchasing a Honda

Accord, a Pontiac Trans Am, and a pickup. He planned to trade in two cars and a pickup.

During the course of the negotiations, checks were filled out for the Honda and for the Trans Am. A third check was signed but not filled in. The third check was signed on June 15 but dated June 18.

The checks Montgomery executed were starter checks drawn on the account of Martin Clark at the Jackson County State Bank of Kansas City, Missouri. The checks did not have the name of the account holder printed on them. Montgomery did not know Clark and did not have permission to use the checks. The two completed checks were signed by Montgomery with the notation "hold for 24 hours" below the signature line.

Edward McFadden, Jay Wolfe's sales manager, testified that Montgomery left the two checks for the amount of the cars with instructions to "run the check" if he did not have the cash as promised.

Montgomery testified that he told McFadden he did not have cash for the cars but would need to arrange financing. He intended to trade in the pickup he was driving and to leave it at the lot so the new vehicles would be held for him, but as he was cleaning out the pickup, he discovered the starter checks. Montgomery said McFadden suggested he leave checks rather than the pickup. Montgomery said he told McFadden the checks were not his, but Montgomery admitted agreeing to the plan.

There were numerous conversations, telephone calls, attempts to obtain title to trade-ins, and other dealings between the parties not material to the issue herein which resulted in Jay Wolfe Honda reporting the Honda and Trans Am as stolen. The vehicles were ultimately returned. Montgomery was charged with but acquitted of two counts of felony theft, in addition to the three counts of making a false writing, for which he was found guilty.

Montgomery appeals the denial of his motions for new trial and judgment notwithstanding the verdict, and his application for probation.

Montgomery raises several issues on appeal, but we will consider only the one we deem controlling.

Montgomery was charged with making a false writing under K.S.A. 21-3711. Montgomery contends this is a general statute

and that he should have been charged under the more specific statute of giving worthless checks in violation of K.S.A. 21-3707. We agree.

K.S.A. 21-3711 provides:

**Making a false writing.** Making a false writing is making or drawing or causing to be made or drawn any written instrument or entry in a book of account with knowledge that such writing falsely states or represents some material matter or is not what it purports to be, and with intent to defraud or induce official action.

"Making a false writing is a class D felony."

A "written instrument" is defined by K.S.A. 21-3110(25) as:

"any paper, document or other instrument containing written or printed matter or the equivalent thereof, used for the purposes of reciting, embodying, conveying or recording information, and any money, token, stamp, seal, badge, trademark, or other evidence or symbol of value, right, privilege or identification, which is capable of being used to the advantage or disadvantage of some person."

K.S.A. 21-3707 relating to the giving of a worthless check provides in material part:

"(1) Giving a worthless check is the making, drawing, issuing or delivering or causing or directing the making, drawing, issuing or delivering of any check, order or draft on any bank, credit union, savings and loan association or depository for the payment of money or its equivalent with intent to defraud and knowing, at the time of the making, drawing, issuing or delivering of such check, order or draft, that the maker or drawer has no deposit in or credits with the drawee or has not sufficient funds in, or credits with, the drawee for the payment of such check, order or draft in full upon its presentation.

. . . .

"(3) It shall be a defense to a prosecution under this section that the check, draft or order upon which such prosecution is based:

"(a) Was postdated, or

"(b) was given to a payee who had knowledge or had been informed, when the payee accepted such check, draft or order, that the maker did not have sufficient funds in the hands of the drawee to pay such check, draft or order upon presentation.

"(4) Giving a worthless check is a class E felony . . . ."

The rule in Kansas regarding specific statutes versus general statutes is well settled.

"Repeals by implication are never favored and a general and specific statute should be read together and harmonized wherever possible. But to the extent of repugnancy between a statute dealing generally with a subject

and another statute dealing specifically with a subject, the specific statute is favored and controls. [Citations omitted.]" *State v. Makin*, 223 Kan. 743, 745, 576 P.2d 666 (1978).

See *State v. Keeley*, 236 Kan. 555, 560, 694 P.2d 422 (1985).

" 'A statute which relates to persons or things as a class is a general law, while a statute which relates to particular persons or things of a class is special.' " *Seltmann v. Board of County Commissioners*, 212 Kan. 805, 810, 512 P.2d 334 (1973) (quoting 82 C.J.S., Statutes § 163, p. 277).

The Kansas Supreme Court in *State v. Wilcox*, 245 Kan. 76, 775 P.2d 177 (1989), construed K.S.A. 21-3711 by holding that welfare fraud must be prosecuted under the specific statute, K.S.A. 39-720, and reasoned that making a false writing is not a specific statute because charges under it may range from falsifying bank statements to making false statements under the campaign finance act. See *State v. Kee*, 238 Kan. 342, 711 P.2d 746 (1985); *State v. Doyen*, 224 Kan. 482, 580 P.2d 1351 (1978).

The *Wilcox* court cited *State v. Wilson*, 11 Kan. App. 2d 504, 728 P.2d 1332 (1986), as persuasive. In *Wilson*, a state employee was convicted of presenting a false claim in violation of K.S.A. 21-3904 and also with presenting a claim for expenses which were not in fact incurred contrary to K.S.A. 75-3202. Both claims arose out of the same act. Our court held that K.S.A. 75-3202 is specific as it deals with a particular class (state employees) and addresses a specific subject (presenting an account for expenses not incurred). Wilson, a state employee, was within the particular class addressed by K.S.A. 75-3202, which was the proper and exclusive statute under which he could be charged. The conviction under the general statute, K.S.A. 21-3904, was reversed.

There are several additional cases which deal with charging the defendant with both the general crime as well as the specific crime. *State v. Helms*, 242 Kan. 511, 513, 748 P.2d 425 (1988) (complaint not defective for charging rape; rape not a more general crime than indecent liberties with child); *State v. Kliewer*, 210 Kan. 820, 504 P.2d 580 (1972) (person charged with the specific crime of turning back an odometer on a motor vehicle, K.S.A. 8-611[b], cannot also be charged with the general crime of a deceptive commercial practice, K.S.A. 21-4403).

The State contends that the legislative intent stated in *State v. McConnell*, 9 Kan. App. 2d 688, 689-90, 688 P.2d 1224 (1984), that "[t]he worthless check statute [K.S.A. 21-3707] was intended 'to stop the mischievous practice of overdrafting and "check-kiting" by the issuance of no funds checks,' " (quoting *Foor v. State*, 196 Kan. 618, 620, 413 P.2d 719 [1966]), is controlling. The State thereby claims that one must have an account to overdraw before a worthless check charge can be made and that the specific statute does not apply because Montgomery was not the holder of the account upon which the check was written.

The State's argument requests an interpretation of the bad check statute which is too narrow. The statute relating to the giving of a worthless check is broad enough to encompass the present situation. The document may be any check, order, or draft on any bank for the payment of money. The maker must know, at the time he gives the paper, that he does not have a *deposit in or credits with* the bank. The language of K.S.A. 21-3707 does not limit its application to only those cases of insufficient fund checks where a deposit actually exists or has recently existed.

*McConnell* does not limit application of K.S.A. 21-3707 to only those cases where the accused actually holds an account in the bank on which the check is written. The principal issue in *McConnell* was intent. The court did not have before it a situation where the maker did not presently have and never had an account with the drawee bank.

Montgomery's contention that he should have been charged under K.S.A. 21-3707 is correct. Montgomery executed checks that were not his. The checks are false writings; however, if the legislature had intended for 21-3707 to apply only to a limited class of checks, it would have to had said so in order for us to so limit the statute's application.

The State's argument that these writings were not checks so that K.S.A. 21-3707 does not apply is without merit. The State has no legal precedent for its argument that because Montgomery had no authority from the issuing bank to make the writings the documents he wrote could not be checks. K.S.A. 84-3-104(2)(b) defines a check as "a draft drawn on a bank and payable on

demand." The necessity for authority from the issuing bank is not a part of this definition.

It also appears that because the prosecution was based on the general crime Montgomery was deprived of the potential defense that Jay Wolfe Honda had knowledge of or had been informed that the maker did not have sufficient funds in the hands of the drawee bank to pay the check upon presentation. K.S.A. 21-3707(3)(b). There was evidence to support Montgomery's defense that Jay Wolfe Honda knew the checks were worthless. McFadden testified that once the pickup and trailer left Wolfe's lot it had no other security.

There also could have been another potential defense available to Montgomery because one check was postdated and two others were to be held for 24 hours. K.S.A. 21-3707(3)(a).

The specific statute of giving a worthless check rather than the general statute of making a false writing must be the basis for the crimes charged. Montgomery's convictions are reversed.