No. 73,104

STATE OF KANSAS, *Appellee*, v. WILLIAM J. FRITZ, *Appellant*.

933 P.2d 126

Opinion filed January 24, 1997.

*Thomas Jacquinot*, special appellate defender, argued the cause, and *Jessica R. Kunen*, chief appellate defender, was with him on the brief for appellant.

*Roger N. Walter*, general counsel, Office of the Securities Commissioner of Kansas, argued the cause, and *Carla J. Stovall*, attorney general, was with him on the briefs for appellee.

The opinion of the court was delivered by

ALLEGRUCCI, J.: William Fritz appealed his jury convictions of four counts of theft by deception and four violations of the Kansas

Loan Broker's Act, K.S.A. 50-1001 *et seq*. The Court of Appeals affirmed the violations of the Loan Broker's Act. It reversed the judgment on the convictions of theft by deception and remanded for resentencing. The State's petition for review was granted by this court on July 11, 1996.

At a business seminar at the Ramada Inn in Salina, Kansas, in March 1991, William Fritz gave the impression of being a successful businessman from Nebraska. He dominated the program, which was designed to introduce the concept of self-liquidating business loans. Participants in the seminar were told that loans in million-dollar increments were available to business people for a $10,000 fee per increment, that the lender was a trust, that the borrowing business person would receive $650,000 of each $1 million, that the other $350,000 would be invested, and that the investment would pay for the loan in 7 years. The $10,000 fee was to be held in escrow until the loan was closed, at which time it would be used to pay closing costs. If the loan were not obtained, the fee would be returned. Thus, a borrower was supposed to be able to pay $10,000 and get $650,000 in return.

In April 1991, Fritz visited Robert Neises at his office. Neises owned a business called Salina Scale Company, which was for sale at that time. Fritz told Neises that he had access to a foreign trust from which he wanted to get a loan to buy the business. The price they discussed for the sale of the scale company was $3 million. Fritz said that the loan fee was $10,000 per $1 million. The $30,000 fee was to be paid by Neises, and, according to Fritz, it would be put in escrow.

Neises introduced his friend and business colleague Joe Hamilton to Fritz. Hamilton had a business in Oklahoma which supplied scale parts to Neises' company. Hamilton, too, was interested in selling his company. The price they discussed for the parts company was $6 million. Fritz told Neises and Hamilton that the loan fee was to be put into escrow and "if at any time the deal went bad," the money would be refunded.

Neises decided to enter into the transaction with Fritz on the sale of Salina Scale Company. On May 1, 1991, Neises and Fritz

signed a Business Sale Agreement on Salina Scale Company, and Neises paid Fritz $30,000.

Hamilton was skeptical, and he said that he did not have $60,000 for the loan fee. When it appeared that Hamilton was not going to enter into a transaction, Neises was told for the first time that the deals with him and Hamilton were tied together so that Neises' transaction would not be completed without Hamilton's entering into a similar agreement. Neises then decided to pay the loan fee for Hamilton.

On May 17, 1991, Neises and Fritz signed a Business Sale Agreement, which does not identify the business, and Neises paid Fritz $60,000. The $60,000 payment was to go into "escrow along with the thirty." Neises signed a third agreement on May 30, 1991, which he believed combined the two Business Sale Agreements; he made no payment when the third agreement was signed.

Neises was told that the loans would be funded in 60 to 120 days. The loan fees would be returned if the loans were not obtained in that time. In August 1991, Fritz substituted a promissory note for $90,000 for the Business Sale Agreements. Until Neises sued Fritz on the note in May 1992, Fritz continued to tell Neises that his money would be refunded if the loans were not funded. In July 1992, Neises received a form letter signed by Fritz as General Manager of "M.E.C. Management, or nominee" stating:

"Greetings!

"Obviously we have been unable to comply with the terms of our Agreement with you because of developments beyond our control.

"Arrangements are being made to return to you the funds you advanced in accordance with the Agreement, prior to September 1st, 1992, with a token interest calculated at Six (6%) per cent per annum, based upon man's innate sense of fair dealing, and to avoid costly litigation effecting settlement of the Contract, if possible.

"If acceptable please sign and date, and return the copy provided for this purpose."

Neises did not respond to the letter.

William Dick attended the seminar at the Ramada Inn in Salina in March 1991. Dick is president of Roof Mart International (Roof Mart) of Chapman, Kansas. He passed on to the company's board

of directors the information he had gotten about the self-liquidating loan program, and the board authorized him to apply for a loan which could be used to purchase the company's building and to expand its market. Dick had the impression that a loan could be obtained in 45-60 days. He believed that Roof Mart would receive $650,000 for the $10,000 fee, that the fee would be held in escrow, that the loan would be self-liquidating due to the return on the $350,000 investment, and that, in addition to the $10,000 fee, a trust which involved Fritz would get a 20% equity in Roof Mart. The document which Dick and Fritz signed was called an Adventure Program Joint Venture Agreement, and it states that the effective date was May 6, 1991. Fritz signed the agreement on behalf of M.E.C. Management. The following day Roof Mart made a $20,000 wire transfer to M.E.C. Management. Dick received the July 1992 form letter.

John Graves is the principal shareholder of Wheat State Carriers in Salina. In early 1991, Fritz was introduced to Graves as a solid businessman who operated a tire recycling operation, which interested Graves because tire disposal is an issue in a trucking business. In June, Graves met with Fritz at Wheat State Carrier's office in Salina for the purpose of discussing the possibility of a loan in exchange for an equity position in the company. Fritz told Graves that a $10,000 payment would be required at the outset so that an IBC (international business corporation) could be set up. Fritz said that the $10,000 would be returned if a loan was not approved within 60 days. With that reassurance, on June 27, 1991, Graves entered into an agreement with Fritz and gave him a check for $10,000 made payable to M.E.C. Graves testified that it was his understanding that the loan was to be "provided through a trust fund through a group of business people." Wheat State Carriers was to receive $650,000; the balance of the requested $1 million was to "be used as a leverage against payment of the loan through some other type of investment." Graves received the July 1992 form letter.

Fritz first contends that the only statute under which he could have been charged for deceptive or fraudulent conduct was K.S.A. 1990 Supp. 50-1017 (now K.S.A. 50-1017), engaging in fraud in

connection with a contract for the services of a loan broker. Fritz also was charged with four counts of theft by deception in violation of K.S.A. 21-3701(b) (Ensley 1988) for the transactions involving Neises, Hamilton, Dick, and Graves. Theft by deception now is defined in K.S.A. 21-3701(a)(2). The Court of Appeals agreed with Fritz that he should have been charged under the more specific statute. We do not agree.

In the second amended complaint, Fritz was charged with 14 counts, and the jury found him guilty of 8 counts. The following chart sets out the charges, transactions, and verdicts:

### Neises/Salina Scale

| | | |
|---|---|---|
| *Count 1* | *K.S.A. 50-1002 and K.S.A. 1990 Supp. 50-1013 Loan Broker's Act registration* | *Not guilty* |
| *Count 2* | *K.S.A. 1990 Supp. 50-1006 and K.S.A. 1990 Supp. 50-1013 Loan Broker's Act disclosure* | *Not guilty* |
| Count 3 | K.S.A. 1990 Supp. 50-1017 and K.S.A. 1990 Supp. 50-1013 Loan Broker's Act fraud | Not guilty |
| **Count 4** | **K.S.A. 21-3701(b) (Ensley 1988) Theft by deception** | **Guilty** |

### Hamilton/Unibridge

| | | |
|---|---|---|
| *Count 5* | *K.S.A. 50-1002 and K.S.A. 1990 Supp. 50-1013 Loan Broker's Act registration* | *Not guilty* |
| *Count 6* | *K.S.A. 1990 Supp. 50-1006 and K.S.A. 1990 Supp. 50-1013 Loan Broker's Act disclosure* | *Not guilty* |
| Count 7 | K.S.A. 1990 Supp. 50-1017 and K.S.A. 1990 Supp. 50-1013 Loan Broker's Act fraud | Not guilty |
| **Count 8** | **K.S.A. 21-3701(b) (Ensley 1988) Theft by deception** | **Guilty** |

### Dick/Roof Mart

| | | |
|---|---|---|
| Count 9 | K.S.A. 1990 Supp. 50-1017 and K.S.A. 1990 Supp. 50-1013 Loan Broker's Act fraud | Guilty |
| **Count 10** | **Violating K.S.A. 21-3701(b) (Ensley 1988) Theft by deception** | **Guilty** |

### Graves/Wheat State Carriers

| | | |
|---|---|---|
| *Count 11* | *K.S.A. 50-1002 and K.S.A. 1990 Supp. 50-1013 Loan Broker's Act registration* | *Guilty* |
| *Count 12* | *K.S.A. 1990 Supp. 50-1006 and K.S.A. 1990 Supp. 50-1013 Loan Broker's Act disclosure* | *Guilty* |

Count 13   K.S.A. 1990 Supp. 50-1017 and K.S.A. 1990 Supp.
         50-1013 Loan Broker's Act fraud           Guilty
**Count 14 K.S.A. 21-3701(b) (Ensley 1988)**
         **Theft by deception**           **Guilty**

We are not concerned with the charges in Counts 1, 2, 5, 6, 11, and 12 for failing to register and to provide a disclosure statement in violation of the Loan Broker's Act (italicized). What we are concerned with are the four charges of theft by deception in relation to each of the four transactions, Counts 4, 8, 10, and 14 (bold). The Court of Appeals concluded that Fritz' sentences for his convictions on those counts "should be vacated and corrected to an appropriate sentence for violating the Kansas Loan Broker's Act."

Pertinent parts of the Loan Broker's Act provide:

"A loan broker shall not, in connection with an offer of or a contract for the services of a loan broker, either directly or indirectly, do any of the following:

(1) Employ any device, scheme or artifice to defraud;

(2) make any untrue statements of a material fact or omit to state a material fact necessary in order to make the statements made, in the light of circumstances under which they are made, not misleading; or

(3) engage in any act, practice or course of business that operates or would operate as a fraud or deceit upon any person." K.S.A. 50-1017.

" 'Loan broker' means any person who, in return for a fee from any person, promises to procure a loan for any person or assist any person in procuring a loan from any third party . . . ." K.S.A. 50-1001(c).

"Any person who willfully violates any provision of this act . . . commits a severity level 7, nonperson felony." K.S.A. 50-1013(a).

K.S.A. 21-3701(b) (Ensley 1988) provided that obtaining control over property when done by deception and with intent to deprive the owner permanently of the possession, use, or benefit of the owner's property constitutes theft by deception.

To establish the offense of theft by deception, the State must prove: (1) The victim was the owner of the property, (2) the defendant obtained control over the property by means of a false statement or representation which deceived the property owner and upon which he or she relied, and (3) the defendant intended to deprive the owner permanently of the use or benefit of the property. PIK Crim. 3d 59.01 (1994 Supp.). To establish the offense of loan brokering fraud, as charged in the present case, the

State had to prove: (1) The defendant made an untrue statement of material fact or omitted a necessary material fact, (2) the defendant engaged in an act which operated or would operate as a fraud upon any person, and (3) the act was done in connection with an offer on a contract for services of a loan broker.

The Court of Appeals analyzed the statutes' applicability in this way:

"Unquestionably, defendant was acting as a loan broker under K.S.A. 50-1001(c), and [money he received in each of the transactions] was the fee he was charging for his services. He was simply using his promise of self-liquidating loans as a scheme to defraud, in violation of K.S.A. 1988 Supp. 50-1017(1). In the alternative, defendant made false, misleading statements as to his history of providing such loans to others, in violation of K.S.A. 1988 Supp. 50-1017(2), and engaged in a course of conduct that would operate a deceit or fraud on others, in violation of K.S.A. 1988 Supp. 50-1017(3)."

According to the Court of Appeals, 50-1017 was "designed to punish the specific activities of those who defraud others by way of loan brokering services." In contrast, K.S.A. 21-3701(a)(2) covers a broader and more generalized scope of activity.

It is the anomaly of the Court of Appeals' concluding that loan broker fraud controls over theft by deception and the jury's finding Fritz not guilty of the "controlling" offense and guilty of theft by deception that leads to a misstep in the Court of Appeals' rationale. That misstep is the Court of Appeals' assumption that Fritz was acting as a loan broker. That assumption is contrary to the jury's finding.

It stands to reason that the jury acquitted Fritz of the loan broker fraud counts involving Neises because it found that the State had not proved that Fritz was acting in connection with a contract for the services of a loan broker. See K.S.A. 50-1017. The nature of each of the transactions with Neises was characterized as the sale of a business rather than as a loan. Fritz' transactions with Dick and Graves, in contrast, were characterized as loans, and the jury found Fritz guilty of loan broker fraud as well as theft by deception. The jury's acquitting Fritz of the Neises counts of failures to register as a loan broker and to provide a disclosure statement as required by the Loan Broker's Act, but finding him guilty of those

offenses with respect to Graves, is additional support for the sup-
position that the jury was not convinced that Fritz was acting as a
loan broker in his dealings with Neises. The jury was convinced,
however, that Fritz engaged in deception.

The Court of Appeals concluded that theft by deception and
loan broker fraud followed the same pattern, with the class being
loan brokers. Assuming that the Court of Appeals' conclusion was
correct as a matter of law and there was a genuine question
whether Fritz acted as a loan broker, it would seem that the of-
fenses could have been charged in the alternative. Upon a jury's
finding that Fritz was not acting as a loan broker in his dealings
with Neises, a conviction of theft by deception would have been
appropriate.

The Court of Appeals found the analysis of *State v. Wilcox*, 245
Kan. 76, 775 P.2d 177 (1989), applicable to the present case. Wil-
cox was charged with making a false writing for representing in
writing that she had not received an assistance check, which she
actually had received and had cashed. The district court dismissed
the complaint against Wilcox on the ground that the charges should
have been brought under the specific statute, K.S.A. 39-720, which
makes welfare fraud a crime. This court affirmed.

The statutes being compared in *Wilcox* were as follows:

"Making a false writing is making or drawing or causing to be made or drawn
any written instrument or entry in a book of account with knowledge that such
writing falsely states or represents some material matter or is not what it purports
to be, and with intent to defraud or induce official action." K.S.A. 21-3711.

"Any person who obtains or attempts to obtain, or aids or abets any other person
to obtain, by means of a willfully false statement or representation, or by imper-
sonation, collusion, or other fraudulent device, assistance to which the applicant
or client is not entitled, shall be guilty of the crime of theft, as defined by K.S.A.
21-3701." K.S.A. 39-720.

Making a false writing is a felony; welfare fraud is a misdemeanor.
The court stated that the legislature's intent in enacting K.S.A. 39-
720 was to punish persons who obtained or attempted to obtain
public assistance by deception, and its only application is to that
conduct. The court stated that by comparison, K.S.A. 21-3711
covers proscribed conduct ranging "from false bank statements to

false statements made under the campaign finance act." 245 Kan. at 78. In other words, "K.S.A. 21-3711 is a general statute, and includes a far greater range of activity than that which is included within the ambit of K.S.A. 39-720." 245 Kan. at 78.

The governing principle stated in *Wilcox* is: "When there is a conflict between a statute dealing generally with a subject and another statute dealing specifically with a certain phase of it, the specific statute controls unless it appears that the legislature intended to make the general act controlling." 245 Kan. 76, Syl. 1. The court further stated: "The general statute and the specific statute clearly conflict." 245 Kan. at 79.

The State argues that engaging in fraudulent conduct in the course of brokering a loan is neither a particular type of unlawful taking nor a specific aspect of it and, therefore, the loan broker's statute is not a specific statute which controls over the theft by deception statute. The argument is somewhat undercut by another case cited by the State, *State v. Wilson*, 11 Kan. App. 2d 504, 728 P.2d 1332 (1986). Wilson was convicted of violating K.S.A. 21-3904 (Ensley 1981), presenting a false claim, and K.S.A. 75-3202, a state employee's presenting an account for expenses not in fact incurred. The Court of Appeals reversed the first conviction and affirmed the second conviction. 11 Kan. App. 2d at 512. The court concluded that 75-3202 was a specific statute which controlled, reasoning that Wilson was included within the particular class addressed by the specific statute. The prohibited activity in both statutes was the same, presenting a false claim. The prohibition of 21-3904 applied generally, but the prohibition of 75-3202 applied only to state employees.

In like manner, in the present case it could be said that the prohibition of 21-3701(b) applied generally; but the prohibition of 50-1017 applied only to loan brokers. It seems to be implicit in 75-3202 that the account for expenses was presented in the course of employment, and it is required under 50-1013 that the fraudulent conduct or scheme be in connection with a contract for the services of a loan broker. However, the proscribed conduct which is the basis for a violation of 50-1013 is not the same as that proscribed under 21-3701(b).

*State v. Williams*, 250 Kan. 730, 829 P.2d 892 (1992), also was a case in which the defendant was included within the particular class addressed by the specific statute. The court observed: "For the general statute versus specific statute rationale to be applicable to the two crimes, the indecent liberties statute must be viewed as a statute generally prohibiting certain sexual behavior and the aggravated incest statute as applying to the identical prohibited conduct by a person related to the victim." 250 Kan. at 736. This observation expressed in the factual circumstances of the present case would be: For the general statute versus specific statute rationale to be applicable to the two crimes, the theft by deception statute must be viewed as a statute generally prohibiting certain deceptive practices and the loan broker fraud statute as applying to the identical prohibited conduct by a person acting as a loan broker in connection with an offer of or a contract for the services of a loan broker. It would seem to be a stretch to say that the theft by deception statute generally prohibits certain deceptive practices when the touchstone for this offense is theft.

In *Williams*, the court concluded that the rationale was applicable:

"Although the elements of the two crimes are similar, the distinguishing factor is that aggravated incest requires the act to be committed by a biological, step, or adoptive relative of the child. This relationship is not an element in the indecent liberties with a child statute. From a reading of these statutes, it is clear that the legislature intended to establish certain sex offenses applicable where family relationships are not involved. The legislature also intended that aggravated incest, a crime committed by a person related to the victim, constitutes a less serious offense than when a similar prohibited act is perpetrated by a defendant against a child with whom he or she has no family relationship." 250 Kan. at 736-37.

In the factual circumstances of the present case, this analysis is much less conclusive. As we have seen, the elements of the two crimes are not particularly similar.

In both *Wilson* and *Williams*, this court found a statute to be a specific, controlling statute because it proscribes for a certain class of persons conduct which is proscribed generally in another statute. The Court of Appeals was persuaded that "[t]he *Wilcox* specific/ general analysis is equally appropriate to the present set of facts."

*Wilcox* is distinguishable from the present case. *Wilcox* involved K.S.A. 39-720, which is intended to punish those who obtain or attempt to obtain public assistance by deception and K.S.A. 21-3711, proscribing the making of a false writing. 245 Kan. at 77-78. The State contended that Wilcox attempted to secure payment of $50 in public assistance to which she was not entitled by signing a statement and an affidavit claiming that she had never received an assistance check, which in fact she had received and cashed. Whether she obtained the additional assistance payment was immaterial. The gist of both 39-720 and 21-3711 required that she make a false representation. In the present case, Fritz' obtaining the victims' property is central to the theft by deception charges, but immaterial to the loan broker fraud charges. This prohibited act (fraud) under 50-1017 of the Loan Broker's Act is not the same act (theft) prohibited under what is now 21-3701(a)(2). Thus, the former does not address a specific subject generally addressed in the latter. The two statutes are not in conflict, and the Court of Appeals incorrectly concluded that they were in vacating Fritz' sentences.

The Court of Appeals also concluded that Counts 13 and 14 are multiplicitous. In *State v. Utterback*, 256 Kan. 340, Syl. ¶ 1, 886 P.2d 808 (1994), this court held: "Multiplicity is the charging of two or more counts in a complaint where only a single criminal offense is involved." The traditional test is whether each charge requires proof of a fact not required in proving the other.

The trial judge instructed the jury that the State had to prove each of the following elements of Count 13 in order to establish the charge of loan broker fraud:

(1) Fritz willfully made a false statement of material fact or omitted a material fact necessary in order to avoid making other statements misleading, or

(2) he willfully engaged in an act which operated or would operate as a fraud, and

(3) this conduct occurred in connection with an offer of or a contract for services of a loan broker.

Although they do not appear to have been remarked on by defendant, the instructions on the counts of theft by deception per-

mitted the jury to find him guilty of an unlawful taking whether or not accomplished by deception. For example, Fritz was charged in Count 4 with theft by deception, but Instruction No. 14 states that the State established the charge if it showed that Fritz had obtained unauthorized control over the property of Neises with intent to permanently deprive Neises of its use or benefit. He was charged in Count 8 with theft by deception, but Instruction No. 21 states that the State established the charge if it showed that Fritz had obtained unauthorized control over the property of Neises with intent to permanently deprive him of its use or benefit. The same is true of Count 10 and Instruction No. 23, and of Count 14 and Instruction No. 27. The jury was not required on the verdict form to specify whether a finding of guilt related to theft or theft by deception. The instructions on the theft by deception counts, including Count 14, permitted the jury to find either theft or theft by deception. The trial judge instructed the jury that the State had to prove the following elements of Count 14 in order to establish the charge of theft by deception:

(1) John Graves was the owner of the property, and

(2) Fritz obtained unauthorized control over the property, or

(3) he obtained control over the property by means of a false statement which Graves believed and relied on, and

(4) Fritz intended to deprive Graves permanently of the use or benefit of the property.

The crimes charged in Counts 13 and 14 share only the component of Fritz' making a false statement. Not all the necessary elements of proof of either crime are included in the other. Loan broker fraud requires proof that a false statement was made in connection with an offer of or a contract for services of a loan broker. Theft by deception requires proof that property was obtained as a result of a false statement. In addition, it requires that the false statement deceived the owner of the property, that he or she relied on it, and that the defendant's intent was to permanently deprive the owner of his or her property. The essence of theft by deception is the unlawful taking of property, but property is not even a consideration with loan broker fraud. Because each charge requires proof of

at least one element not required in proving the other, the charges are not multiplicitous.

The judgment of the Court of Appeals is affirmed in part and reversed in part. The judgment of the district court is affirmed.