(81 P.3d 1268)

No. 87,135

STATE OF KANSAS, *Appellee,* v. JOSEPH C. MATTHEWS, a/k/a MICHAEL J. MATTHEWS, *Appellant.*

Opinion filed January 9, 2004.

*Virginia A. Girard-Brady,* of ABS Legal Services, LLC, of Lawrence, and *Stephen B. Chapman,* of Olathe, for appellant.

*Steven J. Obermeier,* assistant district attorney, *Paul J. Morrison,* district attorney, and *Carla J. Stovall* and *Phill Kline,* attorneys general, for appellee.

Before MARQUARDT, P.J., ELLIOTT, J., and PHILIP C. VIEUX, District Judge, assigned.

MARQUARDT, J.: Joseph C. Matthews, a/k/a Michael J. Matthews, appeals his convictions from his activities as an unlicensed

loan broker. We affirm his convictions and remand for resentencing.

Matthews attended a seminar in March 1998 where the concept of using notes to purchase real estate was presented. Matthews met Junko Irei at this seminar, and they formed an entity called Chatan Corporation (Chatan). Matthews attended a seminar in the fall of 1998 conducted by Charles Key. The seminar focused on the use of notes to buy property for 70 to 75 percent of the property value and later selling the property for full value.

Matthews also met a woman named Julie Teng at the seminar held in March. Irei, Matthews, and Teng leased office space under Chatan's name. Chatan was never registered as a corporation in Kansas or Missouri. Matthews testified that Key was either going to buy some of Chatan's notes, or was going to assist Matthews with the sale of the notes to other investors.

Matthews believed that Chatan was essentially Irei's company because no one had direct access to the money but Irei. According to Matthews, Teng and Irei were close friends. Teng had several properties she wanted to sell, and she allegedly offered to share the equity with Chatan. Matthews testified that Teng often misled clients by telling them that Chatan would give them a home loan.

In December 1998, Joseph Roberts and Charles Scott wanted to buy a home. Roberts contacted a realtor who referred him to Chatan. The realtor set up a meeting between Roberts and Teng at her dry cleaning business.

Roberts and Scott selected a home that was under construction. Teng told Roberts that Chatan would take his down payment, combine it with Chatan's investors' money, and then purchase the home. Roberts gave Teng a check for $820. Roberts testified that Matthews told him that Chatan would procure a loan for them.

Later, Roberts and Scott were told by Matthews that Chatan had closed on "a number of houses." Scott gave Matthews a check for $40,000 as a down payment for the home.

Construction on the home began in February 1999. Roberts became concerned because of Matthews' "very vague" answers to questions about financing. In mid-April, Roberts received an anonymous phone call telling him that Chatan was "going under" and

his money was gone. After repeated attempts to contact Matthews, Roberts asked for a refund of his money. Roberts never received any money from Chatan. Eventually, Roberts and Scott purchased the home after securing financing from another source.

Other Chatan clients had similar experiences. Almost without exception, Chatan's clients had poor credit and were told that Chatan would either loan them money or arrange for a loan. All of Chatan's clients lost money, and none of them were able to close on a house without paying additional money. Chatan never closed a single real estate transaction, although it had taken approximately $95,000 from its clients.

A jury convicted Matthews of 6 counts of unlawful acts in connection with offering services of a loan broker in excess of $25,000, 6 counts of theft, 1 count each of conducting an unregistered mortgage business, operating as a real estate broker without a license, obstruction of legal process, and unregistered loan brokering. The trial court ordered an upward durational departure sentence of 92 months' imprisonment because it ruled that Matthews owed a fiduciary duty to his clients. Matthews timely appeals his convictions.

Matthews argues that the trial court erred when it imposed an upward departure sentence, and the State agrees. See *State v. Gould*, 271 Kan. 394, 414, 23 P.3d 801 (2001). Matthews must be given the presumptive sentence, or a jury must determine the issue of a departure sentence. Therefore, Matthews' sentence is vacated and the case is remanded to the trial court for resentencing.

On appeal, Matthews argues that the State failed to prove he acted as a loan broker as defined in the Kansas Loan Brokers Act (Act), K.S.A. 50-1001(c). This issue requires interpretation of a statute and, therefore, our standard of review is plenary. *State v. Maass*, 275 Kan. 328, 330, 64 P.3d 382 (2003).

K.S.A. 50-1002 provides that it shall be unlawful for any person to engage in the business of loan brokering unless registered under the Act. K.S.A. 50-1001(c) defines "loan broker" as:

"[A]ny person who, in return for a fee from any person, promises to procure a loan for any person or assist any person in procuring a loan from any third party, or who promises to consider whether or not to make a loan to any person."

Roberts paid Chatan an initial fee of $820. Another client gave Chatan a $250 loan processing fee. Other clients were asked for various amounts of money to apply to administrative fees. One man paid $990 at the time he completed a loan application.

Matthews explained that Chatan used a "traditional fee structure" and used the money for credit reports, appraisals, flood certificates, courier fees, and postage. Matthews also told the jury that Chatan charged application and processing fees. Key testified that he did not charge an administrative fee prior to the final sale of the note.

Matthews accepted fees from his clients; thus, this satisfies the first prong of the loan broker definition as defined in K.S.A. 50-1001(c). The next question is whether Matthews promised Chatan's clients that it would procure a loan or assist in procuring a loan.

Roberts was asked if Matthews promised to procure a loan for him. Roberts responded, "Yes, he did." Cheryl Emge-Allen testified that Matthews told her Chatan would give her a loan and her monthly payments would be paid to Chatan. Matthews told Candace Smith that Chatan would purchase the house from her mortgage company so that she could make her monthly payments to Chatan. Teresa Ray was informed that Chatan would purchase her house, sell it back to her, and "carry the note on it." Matthews told Roland Evans that Chatan would provide financing for two properties he wanted to sell, in addition to giving him a loan for property he wanted to buy. Evans testified that Matthews represented Chatan as a licensed mortgage company. Finally, Ronald Birmingham testified that Matthews told him he could make payments to Chatan, but if Birmingham fell behind on his payments, the note would be sold.

Matthews testified that he never told anyone he would procure a loan for them. Matthews blamed the confusion on the fact that his clients had a fundamental lack of understanding about the process of note selling. However, Matthews admitted that he never gave any of Chatan's clients a written explanation of the contract for deed process. Matthews did, however, send Roberts and Scott

a letter which specifically indicated that they had been approved for mortgage funding.

It appears that there was sufficient evidence for the jury to determine that Matthews promised to assist Chatan's clients in obtaining a loan. In some cases, Matthews represented that Chatan would make the loan. Matthews denies that he made such statements. On appellate review, the credibility of the witnesses will not be passed upon, conflicting evidence will not be reweighed, and all questions of credibility are resolved in favor of the State. *State v. Moore*, 269 Kan. 27, 30, 4 P.3d 1141 (2000). We believe that there was sufficient evidence to prove Matthews was acting as a loan broker as defined in K.S.A. 50-1001(c).

### Jury Instructions

In his supplemental appellate brief, Matthews alleges several errors with the jury instructions. At the instructions conference, Matthews objected to Instruction Nos. 13 and 14 regarding his status as a creditor. Matthews noted that he never attempted to portray himself as a creditor. Matthews also objected to the jury being instructed that he had the burden of proof to demonstrate he was a creditor. The instructions were given over Matthews' objection.

When reviewing challenges to jury instructions, we are required to consider all the instructions together as a whole. If the instructions properly and fairly state the law as applied to the facts of the case, and a jury could not reasonably have been misled by them, the instructions do not constitute reversible error even if they are in some way erroneous. *State v. Peterson*, 273 Kan. 217, 221, 42 P.3d 137 (2002).

Instruction No. 13 read:

"A 'creditor' means any person to whom a loan is initially payable on the face of the note or contract evidencing the loan."

Instruction No. 14 read:

"The defendant is charged in Count XVI with operating as a 'loan broker' without being licensed by the Kansas Securities Commission. Exempt from the registration requirements under the Loan Broker's Act are 'creditors' as defined

above. The defendant maintains that he is a 'creditor' and therefore exempt from registering with the Kansas Securities Commissioner.

"The burden of proof of any exemption or classification provided in the Loan Broker's Act shall be on the party claiming the exemption or classification."

The definition of "creditor" in Instruction No. 13 is a direct quote from K.S.A. 50-1001(d). Matthews admitted that this instruction, standing alone, was not objectionable. However, Matthews was concerned with Instruction No. 14.

In general, statutes which shift to the defendant the burden to prove exemptions are not unconstitutional. A defendant is required to produce such facts, if they exist, as might exonerate him or her from the crime charged. *State v. Ribadeneira*, 15 Kan. App. 2d 734, 737, 817 P.2d 1105, *rev. denied* 249 Kan. 778 (1991).

Even though Instruction No. 14 correctly states the law in Kansas, Matthews asserted at trial that the instruction should not be given because he never alleged he was a creditor; thus, he was exempt from registration.

The general rule in Kansas is that the trial court has a duty to instruct the jury on the law applicable to the theories of both the prosecution and the defendant as long as they are supported by competent evidence. *State v. Shehan*, 242 Kan. 127, 130, 744 P.2d 824 (1987).

During the instructions conference, the prosecutor indicated that he would withdraw any reference to the creditor exemption if Matthews would promise not to argue that he was a creditor. Matthews' only response was: "There is a difference from exempt from the Act and exempt from registration. There are certain persons that are exempt from registration."

The State, through the assistant director of enforcement from the Kansas Securities Commissioner's office, stated that a creditor who falls within exemption from the Act "would have to support that they have the means in which to obtain the monies or have the monies themselves, and if they do not, then that's something they need to disclose to the loan applicant." He stated that if an individual is not using his or her own funds, the individual is not a creditor.

Matthews contends that he was prejudiced because the trial court failed to give the jury an affirmative defense instruction. Matthews did not request an affirmative defense instruction. Given that fact, our standard of review looks only to whether the trial court's decision was clearly erroneous. See K.S.A. 2002 Supp. 22-3414(3).

In general, the fact that the PIK affirmative defense instruction was not given will not be considered error when there were other instructions which made it clear that the burden of proof was on the State. Error cannot be predicated on the refusal to give specific instructions where those which were given cover and include the substance of those refused. *State v. Crabtree*, 248 Kan. 33, 40, 805 P.2d 1 (1991).

Instruction No. 6 reads in relevant part:

"The State has the burden to prove the defendant is guilty. The defendant is not required to prove he is not guilty. You must presume that he is not guilty unless you are convinced from the evidence that he is guilty.

"The test you must use in determining whether the defendant is guilty or not guilty is this: If you have a reasonable doubt as to the truth of any of the claims made by the State, you must find the defendant not guilty."

The jury was clearly instructed on the State's burden of proof; thus, we do not believe that the lack of the affirmative defense instruction was clearly erroneous.

The burden of proof was not improperly shifted to Matthews. The jury was instructed to consider any relevant evidence that was presented during the trial. The jury instructions were fair, and we see no undue prejudice or harm.

### *Multiplicity*

Instruction No. 20 addressed the crime of unlawful acts in connection with an offer or a contract for the services of a loan broker, as it related to Roberts and Scott. The trial court listed the elements of the crime and then added: "That this act resulted in a loss in excess of $25,000." The phrase "in excess of $25,000" was also placed on all of the verdict forms for the crime of unlawful acts in connection with an offer or a contract for the services of a loan broker. The evidence clearly shows that only Roberts and Scott lost in excess of $25,000.

Initially, the elements instruction did not include the dollar amount. Matthews objected to including the dollar amount on the verdict form, pointing out that the verdict forms were at odds with the instructions. After hearing arguments of counsel, the trial court decided to add the dollar amount to the instruction, to which Matthews objected.

On appeal, Matthews claims that the inclusion of the dollar amount to the instruction caused the crime of loan broker fraud to be multiplicitous with the crime of theft by deception.

Our standard of review on questions of multiplicity is plenary. *State v. Utterback*, 19 Kan. App. 2d 437, Syl. ¶ 1, 871 P.2d 267, *aff'd in part, rev'd in part* 256 Kan. 340, 886 P.2d 808 (1994).

Multiplicity is the charging of a single offense in several counts of a complaint or information. The primary concern with multiplicity is that it creates the potential for multiple punishments for a single offense. *State v. Garcia*, 272 Kan. 140, 143, 32 P.3d 188 (2001). Under Kansas law, crimes are multiplicitous where (1) the crimes constitute a single wrongful act, or the same evidence is required to prove both crimes, but if each offense requires proof of a fact not required in proving the other, the offenses do not merge; and (2) one offense is an included offense of the other as provided in K.S.A. 2002 Supp. 21-3107(2). *Garcia*, 272 Kan. at 145.

K.S.A. 2002 Supp. 21-3107(2) primarily involves lesser included crimes and is not applicable here. Thus, we turn our attention to the question of whether the same evidence is required to prove both loan broker fraud and theft.

The theft statute, K.S.A. 2002 Supp. 21-3701, reads, in relevant part:

"(a) Theft is any of the following acts done with intent to deprive the owner permanently of the possession, use or benefit of the owner's property:
(1) Obtaining or exerting unauthorized control over property;
(2) obtaining by deception control over property;
(3) obtaining by threat control over property; or
(4) obtaining control over stolen property knowing the property to have been stolen by another."

K.S.A. 50-1017 lists the prohibited acts of the Act:

"A loan broker shall not, in connection with an offer of or a contract for the services of a loan broker, either directly or indirectly, do any of the following:
  "(1) Employ any device, scheme or artifice to defraud;
  "(2) make any untrue statements of a material fact or omit to state a material fact necessary in order to make the statements made, in the light of circumstances under which they are made, not misleading; or
  "(3) engage in any act, practice or course of business that operates or would operate as a fraud or deceit upon any person."

In *State v. Fritz*, 261 Kan. 294, Syl. ¶ 2, 933 P.2d 126 (1997), the Kansas Supreme Court held that loan broker fraud is not the same act as theft. The loan broker fraud statute does not address a specific subject generally addressed in the theft statute. Thus, a defendant charged with loan broker fraud may also be charged with theft because the crimes have different elements. In the instant case, the addition of dollar figures to either the jury verdict or the verdict form did not transform loan broker fraud into theft. The crimes of loan broker fraud and theft are not multiplicitous.

### Inconsistent Verdict

With the exception of the charge involving Roberts and Scott, the loan broker fraud instructions did not include any reference to monetary loss. However, all of the corresponding verdict forms for each count contained the phrase, "in excess of $25,000." Apparently, the inclusion of the phrase was a clerical error. Neither Matthews nor the prosecutor saw the verdict forms before they were submitted to the jury. The State argued that mere clerical error could not have been prejudicial to Matthews. The trial court found that Matthews was not prejudiced by the clerical error.

On appeal, Matthews contends that the verdicts did not conform to the evidence presented at trial. Matthews believes that he was convicted of loan broker fraud involving a loss over $25,000, without adequate evidence to support that conviction.

The verdicts were consistent with each other. This issue is one that can be characterized as a clerical error on the jury form. This would be a different issue had the error been on the jury instructions. However, the instructions adequately mirrored the evidence in this case. The jury weighed the evidence and came to a unanimous verdict. We do not believe that there is any evidence the

jury's verdict was impermissibly tainted, nor do we believe that there is any evidence of prejudice to Matthews.

### Cumulative Error

Matthews contends that he was prejudiced by cumulative trial error. We disagree. We have seen no error that requires reversal.

Matthews' convictions are affirmed, and the case is remanded for resentencing.